### PEOPLE v HARPER

1. CRIMINAL LAW—INSTRUCTIONS TO JURY—APPEAL AND ERROR—PRE-
   SERVING QUESTION.

   A defendant in a criminal case may not seek appellate review of
   instructions to the jury unless an objection to the instructions
   was made during the trial or there is a showing of prejudice to
   the defendant from the use of the erroneous instructions (GCR
   1963, 516.2).

2. CRIMINAL LAW—IDENTIFICATION—ADMISSIBILITY—PRESERVING
   QUESTION.

   . An allegation concerning the improper admission of identification
   testimony in the court below will not be entertained by an
   appellate court where no objection was made to the testimony,
   unless the defendant will be unjustly prejudiced.

3. CRIMINAL LAW—EVIDENCE—IDENTIFICATION—INDEPENDENT BASIS.

   The existence of a potentially prejudicial out-of-court identifica-
   tion will not make a subsequent in-court identification inadmis-
   sible where the in-court identification has an independent basis.

4. CRIMINAL LAW—EVIDENCE—IDENTIFICATION—INDEPENDENT BASIS.

   The factors to be considered in determining whether or not the
   subsequent in-court identification has a basis independent of a
   prejudicial out-of-court identification are: (1) the witness's prior
   opportunity to observe the alleged criminal act; (2) the exis-
   tence of any discrepancy between any pretrial description and
   the defendant's actual appearance; (3) any identification of
   another person before confrontation; (4) photographic identifica-
   tion before confrontation; (5) failure to identify the defendant
   on a prior occasion; and (6) the lapse of time between the
   alleged act and the confrontation identification.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 53 Am Jur, Trial § 824.

[3–5] 30 Am Jur 2d, Evidence § 1143 *et seq.*

[6] 58 Am Jur, Witnesses § 860.

[7] 30 Am Jur 2d, Evidence § 1146.

[8] 30 Am Jur 2d, Evidence § 1080 *et seq.*

5. CRIMINAL LAW—EVIDENCE—IDENTIFICATION—INDEPENDENT BASIS.

A witness's in-court identification in a trial for rape was not colored by the prior identification of the defendant and has an independent basis where the witness had seen the defendant prior to the crime, had been able to observe the defendant closely during the crime, and had not identified any other person prior to the out-of-court confrontation, and where less than three hours had elapsed between the commission of the crime and the witness's out-of-court identification of the defendant (MCLA 750.520).

6. CRIMINAL LAW—EVIDENCE—IDENTIFICATION—RACIAL BIAS—CREDIBILITY.

The credibility of a witness's identification testimony is solely for the consideration of the jury, and where the jury is given the opportunity to weigh the witness's identification testimony in light of her alleged bias against the defendant's race, their decision will not be reviewed on appeal.

7. CRIMINAL LAW—TRACKING-DOG EVIDENCE—ADMISSIBILITY—PROPER FOUNDATION.

Tracking-dog evidence is admissible in criminal cases where a proper foundation is laid which will show that: (1) the handler was qualified to use the dog; (2) the dog was trained and accurate in tracking humans; (3) the dog was placed on the trail where circumstances indicate the alleged guilty party to have been; and (4) the trail had not become so stale or contaminated as to be beyond the dog's competency to follow it.

8. EVIDENCE—SUFFICIENCY—APPEAL AND ERROR.

The Court of Appeals will not review the verdict of the jury where there was evidence presented which would justify the jury's verdict, and in a prosecution for statutory rape, where the evidence presented, if believed by the jury, would establish that (1) the accused had sexual intercourse with the prosecutrix and, (2) the prosecutrix was under the age of 16 years at the time of the incident, there is sufficient evidence upon which the jury could have found the defendant guilty beyond a reasonable doubt.

Appeal from Macomb, George R. Deneweth, J. Submitted Division 2 June 21, 1972, at Lansing. (Docket No. 12957.) Decided October 26, 1972. Leave to appeal denied, 389 Mich 759.

John E. Harper was convicted of statutory rape. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Thaddeus F. Hamera,* Chief Appellate Lawyer, and *Stephen F. Osinski,* Assistant Prosecuting Attorney, for the people.

*Charles R. Towner,* for defendant on appeal.

Before: HOLBROOK, P. J., and R. B. BURNS and T. M. BURNS, JJ.

T. M. BURNS, J. On April 3, 1970, a jury found the defendant John Eddie Harper guilty of statutory rape pursuant to MCLA 750.520; MSA 28.788. He was sentenced to life imprisonment and appeals as of right.

The victim of the rape testified that on the evening of December 19, 1969, she retired to her room located in the upstairs portion of her parents' home and went to bed. Approximately an hour later, she was awakened by a man sitting on her bed. The man put a knife case to her throat, pulled down the bottoms of her pajamas, and forced her to submit to sexual intercourse.

The prosecutrix stated that she was able to discern the facial features of her assailant since her room was partially illuminated by the lights of a parking lot located next to her home. Moreover, she estimated that during the commission of the crime, the man's face was only five inches away from her.

After committing the act, the attacker ran down the stairway to the ground floor of her home. As he was running out of the front door, he tripped over a box. This noise coupled with the victim's

cries for help woke her father, who was sleeping in the living room. He testified that when he awoke and looked out of the window, he saw a man run through the backyard and down a nearby alley. Upon learning of the incident in his daughter's bedroom, he summoned the Romeo City Police. The police were on the scene a few minutes later.

Since it had been snowing earlier in the day, the assailant's tracks were plainly visible in the snow. One set of tracks led to the complaining witness's home. A second set led from her home, through the backyard and down an alley to the next street. Investigating officers testified that both sets of tracks were made by the same person.

After reaching the street, the police were unable to follow the assailant's trail because heavy vehicular traffic had obliterated the tracks. In order to continue the tracking, the city police requested the use of a state police tracking dog.

The tracking dog, a German shepherd, and its handler reported to the scene of the crime about an hour later. The handler testified that the dog followed the assailant's trail across the street. The dog continued to follow the trail which eventually led to a house about three blocks away where the defendant resided with several other persons. The police were met at the door of the house by two residents of the dwelling. Upon discovering that the defendant also lived in the house, the police asked to see him. When the defendant appeared, the tracking dog began to bark and snarl at him. The handler testified that this was the dog's usual reaction when it found the person it was tracking. The dog did not bark at the other residents of the house.

The defendant was arrested and immediately driven back to the prosecutrix's home where she

identified the defendant as the perpetrator of the rape.

The issues raised by the defendant on appeal will be treated in the manner presented below.

1. *May a criminal defendant complain for the first time on appeal that the trial court erred in its instructions to the jury when defense counsel failed to object thereto and expressed satisfaction with the instructions?*

The defendant complains of three specific sentences in the trial court's instructions to the jury.[1] It is the defendant's position that these sentences confused the jury to such an extent that they could not have known the proper law to apply to the facts of the case. We disagree.

This Court in *People v Spaulding,* 42 Mich App 492 (1972), recently set forth the guidelines which govern an appellate review of jury instructions. In *Spaulding* we said:

"When reviewing an instruction to determine whether or not it stated the applicable law or prejudiced the defendant, we will examine the instruction as a whole rather than in small excerpts. *People v Pearson,* 13 Mich App 371 (1968), and *People v Haggai,* 332 Mich 467 (1952). Moreover, it is well settled that, absent a showing of manifest injustice, criminal defendants seeking a review of allegedly erroneous instructions to

---

[1] "I further charge you, members of the jury, that it is your duty, and you must seek to reconcile testimony of all witnesses presented by the people.

\* \* \*

"Any person who shall unlawfully and carnally know and abuse any female under the full age of 16 years, shall be proper, and so forth.

\* \* \*

"The offense charged in this statute is complete, if a person makes an assault, as I have defined it, upon a female child under the age of 16 years, with intent to commit the crime of rape, as I have explained, shall be guilty of a felony."

the jury must make a timely objection to those instructions in accordance with GCR 1963, 516.2 which provides:

" '2. Objections. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider the verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.'

"See also *People v Tubbs,* 22 Mich App 549 (1970); *People v Keys,* 9 Mich App 482 (1968); *People v Keiswetter,* 7 Mich App 334 (1967), and *People v Cassidy,* 4 Mich App 215 (1966)."

An examination of the record in the instant case reveals that defense counsel voiced no objection to the instructions here in question. In fact, he expressed satisfaction with the charge.

Furthermore, after a close reading of the trial court's instructions, we are not convinced that taken as a whole, defendant was prejudiced thereby.

Defendant's assignment of error to the instructions raised here for the first time on appeal is, therefore, without merit.

2. *Was the victim's in-court identification of the defendant rendered inadmissible as a result of a prior illegal confrontation and the racial bias of the victim?*

The defendant argues that the victim's in-court identification of him as the perpetrator of the rape was inadmissible for the reasons that: (1) it was tainted by the prior illegal identification at the victim's home after his arrest; and (2) the victim was biased against defendant's race. Defendant's argument is not well taken.

It is axiomatic that unless a defendant will be unjustly prejudiced, we will not entertain an alle-

gation concerning the improper admission of identification testimony where there was no objection made to the testimony in the court below. *People v Council,* 36 Mich App 682 (1971); *People v Grenier,* 34 Mich App 93 (1971); *People v Schram,* 23 Mich App 91 (1970), *leave den* 384 Mich 833 (1971).

Here, there was no objection to the victim's in-court identification of the defendant. Therefore, we must next turn to the question of whether the defendant was prejudiced by this testimony.

Even assuming arguendo that defendant's rights were violated when he was taken back to the victim's home for identification,[2] the victim's subsequent in-court identification will not be deemed inadmissible or prejudicial if it had an independent basis. *People v Maniez,* 34 Mich App 55 (1971).

The factors to be considered in determining whether or not the subsequent in-court identification had a sufficient independent basis were set forth in *People v Hutton,* 21 Mich App 312, 326 (1970) as follows:

"And among the facts to be considered in applying this test are: the witness' prior opportunity to observe the alleged criminal act; the existence of any discrepancy between any pretrial description and the defendant's actual appearance; any identification of another person before confrontation; photographic identification before confrontation; failure to identify the defendant on a prior occasion; and the lapse of time between the alleged act and the confrontation identification."

Applying the *Hutton* criteria to the case at hand, it is clear that the victim's in-court identification of the defendant was not colored by the prior identification at the victim's home. The com-

---

[2] Defendant was not represented by counsel at this identification.

plaining witness testified that she had seen the defendant in the neighborhood prior to the rape. She explained in detail how she was able to closely observe the defendant during the commission of the crime. She had not identified any other person prior to the confrontation at her home. Moreover, less than three hours had elapsed between the commission of the crime and her identification of the defendant.

Defendant further argues that the victim's in-court identification was rendered inadmissible because her alleged bias against the defendant's race. This argument cannot be sustained.

Defendant's assertion amounts to little more than an attack upon the credibility of the victim's in-court identification testimony. The credibility of identification testimony is solely for the consideration of the jury. *People v DuPuie,* 31 Mich App 14 (1971); *People v Hayton,* 28 Mich App 673 (1971); *People v De Smyther,* 23 Mich App 48 (1970).

The jury in this case was given the opportunity to weigh the victim's identification testimony in light of her alleged bias against the defendant's race. We will not sit as a reviewing jury and weigh this evidence anew.

In view of all of the foregoing, we hold that the victim's in-court identification testimony was neither inadmissible nor prejudicial to the defendant.

3. *In a prosecution for statutory rape, was it error to admit the testimony of the tracking dog's handler relative to the discovery of the defendant as the perpetrator of the rape?*

Next the defendant contends that it was reversible error to admit evidence pertaining to the tracking dog following the assailant's tracks leading from the victim's home to the residence of the defendant.

The admissibility of tracking-dog evidence in criminal cases is a question of first impression in our jurisdiction. However, after an extensive examination of the authorities from other states, we are in accord with the weight of authority that, upon a proper foundation being laid, tracking-dog evidence is admissible in criminal cases.[3]

In order to safeguard the reliability of tracking-dog evidence, it must be shown as a condition precedent to its admissibility that: (1) the handler was qualified to use the dog; (2) the dog was trained and accurate in tracking humans; (3) the dog was placed on the trail where circumstances indicate the alleged guilty party to have been; and, (4) the trail had not become so stale or contaminated as to be beyond the dog's competency to follow it. *People v Centolella,* 61 Misc 2d 726; 305 NYS2d 460 (1969).[4] See also 18 ALR3d 1221, *Evidence of Trailing Dogs in Criminal Cases.*

In the instant case there were 14 pages of testimony by the dog's handler which demonstrated that both the dog and the handler were intensively trained and accurate in tracking humans, the dog was placed on the trail where the perpetrator of the rape left the victim's home, and the trail was fresh and within the dog's competency to follow it.

We hold, therefore, that since a proper foundation was laid, the trial court did not err in receiving the tracking-dog evidence.

4. *In a prosecution for statutory rape where there is testimony tending to prove all of the*

---

[3] Our research disclosed that of the 25 jurisdictions that have ruled upon the question of the admissibility of tracking dog evidence in criminal cases, 20 allow the evidence to be received upon a proper foundation being laid. Five forbid its use altogether.

[4] Although this case dealt specifically with bloodhounds, for a similar result with German shepherds, see *Terrell v State,* 3 Md App 340; 239 A2d 128 (1968).

*elements of the offense and the identification of the accused as the perpetrator of the crime, does the evidence warrant a finding of guilty beyond a reasonable doubt?*

The defendant raises the above-captioned issue but has failed to support it with argument or citations. He merely states "appellant contends the verdict should not have been guilty". Defendant's contention is erroneous.

In criminal matters this Court does not sit as a reviewing jury hearing the cases *de novo.* If there was evidence presented in the lower court which would justify the jury's verdict, that verdict is final. *People v Bynum,* 21 Mich App 596 (1970); *People v Knapp,* 34 Mich App 325 (1971).

In a prosecution for statutory rape, the people must prove two essential elements. They are: (1) that the accused had sexual intercourse with the prosecutrix; a penetration, however slight, is sufficient to establish this element, *People v Gay,* 15 Mich App 484 (1969); and (2) that the prosecutrix was under the age of 16 years at the time of the incident.

In the case at bar, the record reveals that there was evidence presented which, if believed by the jury, would establish that the defendant had sexual intercourse with the 14-year-old prosecutrix.

We hold, therefore, that there was sufficient evidence presented upon which the jury could have found the defendant guilty beyond a reasonable doubt.

Affirmed.

All concurred.