PEOPLE v McPHERSON

Docket No. 77-2216. Submitted May 4, 1978, at Detroit.—Decided
    August 22, 1978. Leave to appeal applied for.
    Edward A. McPherson was convicted of breaking and entering an
      occupied dwelling with intent to commit larceny, Recorder's
      Court of Detroit, Irwin Burdick, J. The only inculpating evi-
      dence presented by the people was the testimony of a police
      officer who accompanied a tracking dog that was put on the
      trail of the perpetrator of the crime and led the officer to the
      defendant. The defendant appeals. *Held:*
        Tracking dog evidence, standing alone, is insufficient to sup-
      port a conviction.
        Reversed.

1. EVIDENCE—CRIMINAL LAW—TRACKING DOG EVIDENCE.
    Tracking dog evidence is admissible in Michigan; however, such
      evidence, standing alone, cannot support a criminal conviction.

2. CRIMINAL LAW—APPEAL AND ERROR—MOTIONS—DIRECTED VERDICT
    OF ACQUITTAL—REASONABLE DOUBT.
    A reviewing court, in passing on a motion for a directed verdict of
      acquittal in a criminal case, must consider only the evidence
      which had been introduced at the time the motion was made,
      view that evidence in the light most favorable to the prosecu-
      tion, and determine whether that evidence, if credible and
      believed, would justify a reasonable man in concluding that all
      elements of the crime were established beyond a reasonable
      doubt.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

REFERENCES FOR POINTS IN HEADNOTES
[1] 30 Am Jur 2d, Evidence § 1146.
[2] 5 Am Jur 2d, Appeal and Error § 885.

*Miller, Amberg & Cristini, P. C.,* for defendant on appeal.

Before: M. F. CAVANAGH, P. J., and BRONSON and D. F. WALSH, JJ.

M. F. CAVANAGH, P. J. Following a jury trial defendant was convicted of breaking and entering an occupied dwelling with intent to commit larceny, MCL 750.110; MSA 28.305. He was sentenced to three years probation, the last six months of which were to be served in the Detroit House of Correction if the terms of probation were not met. From a denial of a motion for new trial or judgment notwithstanding the verdict, defendant appeals of right.

The theory of the defense was alibi. Several witnesses, friends of the defendant, testified as to his whereabouts around the time the offense was alleged to have occurred. Other evidence supportive of the defendant was testimony that fingerprints taken at the scene did not match those of the defendant. The only inculpating evidence presented by the people was the "testimony" of one Chad. It is undisputed that Chad is highly trained and proficient at his skill. Moreover, the police officer accompanying this witness was equally well trained and testified without contradiction that ground and weather conditions at the time were optimum.

At trial, the defendant never took the stand. Neither did Chad. Chad is a police tracking dog.

The sole issue presented in this appeal is one of first impression in this state: whether evidence of identification presented through testimony concerning the actions of a police tracking dog, standing alone, is sufficient to allow the jury to find a defendant guilty beyond a reasonable doubt.

We accept the premise that tracking dog evidence is admissible in Michigan. *People v Norwood,* 70 Mich App 53, 55; 245 NW2d 170 (1976), *lv den,* 397 Mich 884 (1976), and *People v Harper,* 43 Mich App 500, 508; 204 NW2d 263 (1972), *lv den,* 389 Mich 759 (1973). From this premise, the people argue that the tracking dog evidence is, therefore, "any evidence" upon which a jury could base a finding of guilt and that the standard of review enunciated in *People v Garcia,* 398 Mich 250, 256; 247 NW2d 547 (1976), requires us to affirm this conviction. We disagree. This case provides an excellent example of how the standard of review on a sufficiency of the evidence question has been semantically disfigured. While the evidence presented here is certainly "any" evidence, we are equally certain, because of the authority outlined below, that this evidence is not "sufficient". We reaffirm this Court's elucidation of the proper standard of review in *People v Royal,* 62 Mich App 756, 757–758; 233 NW2d 860 (1975):

"In passing on a motion for a directed verdict of acquittal in a criminal case, the reviewing court must 1) consider only the evidence which had been introduced at the time the motion was made, *People v DeClerk,* 58 Mich App 528; 228 NW2d 447 (1975), 2) view that evidence in the light most favorable to the prosecution, *People v Vail,* 393 Mich 460, 463; 227 NW2d 535 (1975), *People v Watkins,* 36 Mich App 380, 385; 193 NW2d 914 (1971), and 3) determine whether that evidence, if credible and believed, would justify a reasonable man in concluding that all elements of the crime were established beyond a reasonable doubt. *People v Belcher,* 29 Mich App 341, 352; 185 NW2d 440 (1971), *People v Hood,* 37 Mich App 195, 197; 194 NW2d 472 (1971)." (Footnotes omitted.)

In determining the sufficiency of this evidence

we note that no authority has been presented to us, nor have we found any, which indicates that tracking dog evidence, standing alone, can support a conviction. The necessity of corroboration appears uniform.

"Courts adhering to the view that bloodhound evidence is admissible concede that such evidence is to be accepted with caution and is not, under any circumstances, to be regarded as conclusive evidence of guilt. It is generally held that this class of evidence is cumulative or corroborative only. Such evidence is at best a circumstance to be considered by the jury in connection with all the other proof in the case, in determining the guilt or innocence of the accused. *It is not conclusive evidence of guilt and, standing alone, is not sufficient to sustain a conviction; there must be other and human testimony to convict.* Statements are frequently found in the cases to the effect that bloodhound evidence is of little probative value and is not looked upon with favor. A conviction resting in part upon bloodhound evidence cannot be supported where the other evidence tending to show guilt is fragmentary and unsubstantial." 30 Am Jur 2d, Evidence, § 1146, p 322. (Footnotes omitted.) (Emphasis added.)

The necessity of corroborating evidence to support a conviction is also discussed in Anno: *Evidence of trailing by dogs in criminal cases,* 18 ALR3d 1221, 1237:

"It has generally been held or recognized that bloodhound evidence properly admitted in evidence in the trial of a criminal case is not of itself sufficient to support a conviction."

The annotation goes on to provide authority from Kansas, Kentucky, Louisiana, Mississippi, Missouri, North Carolina, Ohio, Oklahoma, South

Carolina, and Tennessee for the rule. No citation is provided for a minority view.

Further:

"Courts adhering to the view that bloodhound evidence is admissible concede that such evidence is to be accepted with caution, and is not under any circumstances to be regarded as conclusive evidence of guilt. It is generally held that this class of evidence is cumulative or corroborative only, and not sufficient of itself to support a conviction. This appears to be the trend of the cases set out in the annotations in L.R.A. and Ann. Cas., and has been definitely held in several of the more recent cases. See *State v Fixley* (1925) 118 Kan 1, 233 796; *Meyers v Com* (1922) 194 Ky 523, 240 SW 71; *State v Freyer* (1932) 330 Mo 62, 48 SW (2d) 894; *State v Yearwood* (1919) 178 NC 813, 101 SE 513; *Copley v State* (1926) 153 Tenn 189, 281 SW 460. And see dissenting opinion in *State v Grba* (1923) 196 Iowa 241, 194 NW 250, and *State v Harrison* (1921) 149 La 83, 88 So 696." Anno: *Evidence of trailing by dogs,* 94 ALR 413, 425–427.

The reasons for the necessity of corroborating evidence can be gleaned from the arguments against the admission of tracking dog evidence:

"The principal objections to the use of bloodhound evidence appear to be: (1) That the many variable factors involved, such as the training and experience of the dogs, the manner in which they are handled, the circumstances surrounding the trailing, etc., as well as the inability of the court to check up on the dogs and tell why they acted as they did, make such evidence too uncertain and unreliable to warrant its admission in the trial of a criminal case; (2) that the jury, due to the superstitious awe with which people regard the actions of animals, are likely to give more weight to such evidence than it is entitled to, particularly where it is introduced in connection with some heinous crime about which there has been much public indignation

and excitement; (3) that the life and liberty of a free citizen ought not to be put in jeopardy on the testimony of dogs; (4) that the defendant cannot cross-examine the dogs; (5) that such evidence is hearsay; and (6) that the defendant is deprived of his constitutional right to confront the witnesses against him." (Footnote omitted.) 18 ALR3d at 1223–1224.

In the two reported Michigan cases in which tracking dog evidence was admitted and a conviction resulted, there was corroborating evidence. *People v Harper, supra, People v Norwood, supra.*

We are persuaded, therefore, that the great weight of authority supports the logical rule that tracking dog evidence, standing alone, is insufficient to support a conviction. In so holding, we intend no criticism of the cunning canine, Chad, or his progeny. Certainly evidence doggedly gleaned from the efforts of these hounds has been held in high esteem for centuries, as noted in *Blair v Commonwealth,* 181 Ky 218, 220–221; 204 SW 67 (1918):

"If we may credit Sir Walter Scott, such evidence was looked upon with favor as early as the twelfth century. In 'The Talisman' it is related that in the joint crusade of Richard I of England and Philip II of France, Roswell, the hound, pulled from the saddle Conrade, Marquis of Montserrat, thus mutely accusing him of the theft of the banner of England. Philip defended the Marquis with the remark, 'Surely the word of a knight and a prince should bear him out against the barking of a cur.' To which Richard replied, 'Royal brother, recollect that the Almighty who gave the dog to be companion of our pleasures and toils, both invested him with a nature noble and incapable of deceit. He forgets neither friend nor foe; remembers, and with accuracy, both benefit and injury. He hath a share of man's intelligence, but no share of man's falsehood. You may bribe a soldier to slay a man with his sword, or a witness to take life by false accusation; but you cannot make a

hound tear his benefactor; he is the friend of man save when man justly incurs his enmity. Dress yonder Marquis in what peacock robes you will, disguise his appearance, alter his complexion with drugs and washes, and hide himself amidst a hundred men, I will yet pawn my sceptre that the hound detects him, and expresses his resentment, as you have this day beheld.' "

After extended discussion of relevant authority, this tribute was also noted by Barefoot, Judge, in the case of *Buck v State,* 77 Okla Cr App 17, 35–36; 138 P2d 115 (1943), wherein he stated:

"In view of this testimony, we have decided that the tribute to the hound by Richard I of England, as above quoted, shall be a monument or tribute to 'Old Boston,' and for this reason we perpetuate his name in the law books of this state. Though the state has not erected a monument to his memory, his services will ever be remembered, not only in the instant case but others.

"As above stated, the evidence in this case is almost wholly based upon circumstantial evidence, and while we recognize the rule announced in the decisions which have been cited, that a conviction will not be upheld upon the evidence alone of trailing by bloodhounds, yet that evidence being competent as a circumstance, together with the other evidence in the case, where competent proof has been given as to the qualifications, training and experience of the bloodhounds used, as in the instant case, this testimony *together with the other evidence* in the case presented a question of fact for the jury to pass upon as to the guilt or innocence of the defendant." (Emphasis added.)

In the instant case, the supporting "other" evidence which enabled "Old Boston" to track himself into the law reports of Oklahoma does not exist for "Chad". The evidence presented being insufficient to support a conviction, we reverse.