PEOPLE V PLANTEFABER

Docket No. 78-2022. Submitted June 13, 1979, at Grand Rapids.—
        Decided August 20, 1979. Leave to appeal applied for.
        Defendant, Cornelius Plantefaber, was convicted in Kalamazoo
        Circuit Court, Donald T. Anderson, J., of possession of mari-
        juana with intent to deliver. The Metropolitan Narcotics Squad
        of Tucson, Arizona, was conducting a general surveillance at
        the Tucson International Airport, watching for evidence of
        possible narcotics activity. Defendant was observed running to
        the TWA ticket counter after being told that an American
        Airlines flight he wanted was full. Defendant purchased a
        ticket for a flight scheduled to depart in 32 minutes and
        checked two suitcases with the ticket agent. Two officers en-
        gaged in smelling the baggage checked with the airlines de-
        tected the odors of marijuana and talcum powder on defen-
        dant's baggage. Defendant matched the "profile" used by nar-
        cotics agents in detection of persons possibly involved in narcot-
        ics activities. The officers opened one suitcase and discovered 14
        bricks of marijuana. They removed two bricks, retaining one
        and marking and returning the other. The edge of the other
        suitcase was pried open and marijuana bricks were observed
        inside, but, because of the scheduled departure of the plane,
        this suitcase was not opened. Both cases were replaced for
        loading on the plane. The Arizona police phoned the Kalama-
        zoo police and gave them a description of defendant and his
        suitcases. The Kalamazoo police observed defendant retrieve
        the suitcases and get in a taxi. They stopped the cab, arrested
        defendant and opened one of the suitcases. Defendant sought at
        trial to suppress the evidence of the contents of the suitcases as
        the product of illegal searches and seizures, but the evidence
        was allowed to be admitted. Defendant appeals. Held:
            1. The Arizona officers had probable cause under exigent

References for Points in Headnotes
[1] 68 Am Jur 2d, Searches and Seizures §§ 41, 43, 44.
    Lawfulness of nonconsensual search and seizure without warrant,
        prior to arrest. 89 ALR2d 715.
[2] 68 Am Jur 2d, Searches and Seizures §§ 41, 43, 44.
    5 Am Jur 2d, Arrest § 44 et seq.
[3] 5 Am Jur 2d, Appeal and Error § 776 et seq., 800.

circumstances to search defendant's luggage without first obtaining a warrant.

2. The seizure and search by the Kalamazoo police was not an unconstitutional "search" but merely a continuation of the police domination and control of the suitcases first exercised by the Arizona officers.

3. A trial court did not commit reversible error where it incorrectly determined that a potential witness who was not endorsed by the prosecution and not produced at trial was not a res gestae witness but where it correctly determined that the witness's testimony would be merely cumulative.

Affirmed.

1. SEARCHES AND SEIZURES — CONSTITUTIONAL LAW — WARRANTLESS SEARCHES — PROBABLE CAUSE — EXIGENT CIRCUMSTANCES.

Police officers specially trained in narcotics investigation had probable cause under exigent circumstances to search suitcases without first obtaining a warrant where) the suitcases were checked with an airline by an individual matching the "profile" used by narcotics investigators in detection of persons possibly involved in narcotics activity, the officers detected the odor of marijuana in the suitcases and it was impractical to obtain a warrant before the plane was to take off with the luggage.

2. SEARCHES AND SEIZURES — CONSTITUTIONAL LAW — EVIDENCE — WARRANTLESS SEARCHES.

There was no unconstitutional warrantless search of a defendant's luggage by police in Michigan where the luggage had been lawfully searched by police in an Arizona airport and found to contain marijuana, where the Michigan police were given the description of defendant and his luggage and informed of the results of the Arizona search and where the Michigan police, acting on the information, arrested defendant and searched his luggage; evidence obtained in such a search is admissible.

3. CRIMINAL LAW — RES GESTAE WITNESSES — CUMULATIVE TESTIMONY.

A trial court did not commit reversible error where it incorrectly determined that a potential witness who was not endorsed by the prosecution and not produced at trial was not a res gestae witness but where it correctly determined that the witness's testimony would be merely cumulative.

*Frank J. Kelley,* Attorney General, *Robert A.*

*Derengoski,* Solicitor General, *James J. Gregart,* Prosecuting Attorney, and *Stephen M. Wheeler,* Principal Appellate Attorney, for the people.

*Jerkins, Plaszczak, Hurley & Bauhof,* for defendant.

Before: D. F. WALSH, P.J., and M. J. KELLY and E. F. OPPLIGER,* JJ.

D. F. WALSH, P.J. Defendant was convicted in a bench trial of possession of marijuana with intent to deliver, MCL 335.341(1)(c); MSA 18.1070(41)(1)(c). He was sentenced to a three-year term of probation and was ordered to pay court costs in the amount of $500.

On July 26, 1973, police officers of the Metropolitan Narcotics Squad in Tucson, Arizona, were conducting a general surveillance at the Tucson International Airport. They were observing persons and baggage at the airport for possible narcotics activity. At 10:45 p.m. defendant was seen entering the airport terminal and running up to the TWA ticket counter after being told that an American Airlines flight he wanted was full. He bought a ticket for a flight to Kalamazoo, Michigan. The flight was scheduled to leave at 11:17 p.m. Defendant checked two suitcases with the airline agent. According to two officers who saw defendant, he fit the "profile" used by narcotics investigators in detection of persons possibly involved in narcotics activity. For example, defendant had arrived at the airport shortly before his departure, he was very nervous and did not let go of his bags until they were checked with the airline. Defendant's age, dress and the apparent

---

* Circuit judge, sitting on the Court of Appeals by assignment.

heaviness of his bags were also considered material factors. Two other officers were stationed in the lower level baggage area, to which a conveyor belt conveyed luggage which had been checked with the airline. They were in the process of smelling all of the bags and were told to pay particular attention to those of defendant. One of the officers testified that he smelled defendant's suitcases and detected the odors of marijuana and talcum powder, which is commonly used to mask the odor of marijuana. Talcum powder was seen on the outside of one of the suitcases. One suitcase was opened and found to contain 14 bricks of marijuana. One brick was removed and retained by the officers. Another was removed, marked and returned to the suitcase. The suitcase was then closed and sealed. An edge of the other case was pried open; marijuana bricks were seen inside the case. Because of the plane's departure, there wasn't time to open this suitcase. The cases were each replaced on the conveyor belt for loading into the plane.

Lt. Michael Moshier of the Kalamazoo Police Department received a phone call from one of the Arizona officers in the early morning hours of July 27. The Arizona officers gave him a description of defendant and his suitcases and information concerning defendant's arrival. This information was forwarded to Officer Wayne Loney, who went to the Kalamazoo airport and saw defendant disembark from the plane. He watched defendant claim the two suitcases which matched the descriptions relayed to him by Lt. Moshier. Defendant took the bags to a taxicab. As the taxicab drove away from the airport, it was stopped by the police. Defendant was arrested and the suitcases were removed from the taxicab. One of the cases was opened at

that time. The other suitcase was opened at the jail to which defendant was taken.

Defendant unsuccessfully moved for suppression of the evidence relating to the contents of his suitcases, claiming that he had been the victim of two unconstitutional searches and seizures. With respect to the police activity in Arizona, the trial court found that defendant had matched the narcotics profile, that experienced officers had detected the odor of marijuana in defendant's suitcases, and that there had not been time for the Arizona officers to obtain a search warrant before the departure of defendant's plane. The court ruled that the existence of probable cause and exigent circumstances had made the warrantless Arizona search and seizure reasonable. We agree.

In determining if the Arizona officers had probable cause to search the suitcases, we must examine the facts, circumstances and information known to them at the time of the search. *People v Rodriguez,* 83 Mich App 606, 609; 269 NW2d 199 (1978).

The Arizona officers had observed defendant and had concluded that he matched a narcotics "profile". The officers were specially trained in narcotics investigation and were experienced in detection of marijuana. They detected the odors of marijuana and talcum powder emanating from the suitcases. As observed by Justice WILLIAMS in *People v Hilber,* 403 Mich 312, 333; 269 NW2d 159 (1978) (dissenting opinion of WILLIAMS, J.), the United States Supreme Court has recognized "the evidentiary quality of odor". See *Johnson v United States,* 333 US 10; 68 S Ct 367; 92 L Ed 436 (1948).

With respect to probable cause, the United States Supreme Court's decision in *United States v Chadwick,* 433 US 1; 97 S Ct 2476; 53 L Ed 2d 538 (1977), supports the trial court's ruling. In that

case the Supreme Court affirmed suppression of evidence because of the absence of the requisite exigency for a warrantless search and seizure. The Court, however, did not disturb the holding of the First Circuit Court of Appeals that there had been probable cause to search the defendants' foot-locker. Railroad officials in San Diego had noticed that the footlocker, which they saw being loaded onto a train bound for Boston, was unusually heavy and that it was leaking talcum powder. Because one of the defendants matched a profile used to spot drug traffickers, the officials notified Federal agents in San Diego, who relayed the information to Federal narcotics agents in Boston. When the train arrived in Boston, the footlocker was claimed by the defendants. The Federal agents released a police dog trained to detect marijuana near the footlocker. Without alerting the defendants, the dog signaled the presence of a controlled substance inside the footlocker. We agree with the First Circuit that there was probable cause to search the footlocker. We also see no significant distinction, regarding probable cause, between that case and the case at hand.

Defendant's reliance on *People v Hilber, supra,* is misplaced. In that case, although some of the Justices acknowledged distinctions between the separate odors of unburned, burning and burned marijuana insofar as those odors might constitute probable cause for a search, there was no disagreement that the odor of unburned marijuana was indicative of the actual presence of marijuana.[1]

---

[1] Defendant also cites cases involving the admissibility of tracking dog evidence. Attacking the reliability of the Arizona officers' testimony concerning their detection of marijuana, he argues that "a human whose degree of smell is presumably inferior compared to a dog should not be allowed to validate his own experience by his own self-serving statements". We find unpersuasive defendant's analogy to tracking dog evidence. Such evidence is admissible only if it satisfies

Although we agree with the trial court's determination that there was probable cause to search defendant's suitcases in Arizona, our inquiry must go further to a determination of whether there was an adequate showing of some exigency to support the need for an immediate warrantless search. *United States v Chadwick, supra,* 15. We are guided by the standard of reasonableness, the cornerstone in Fourth Amendment analysis. *United States v Chadwick, supra,* 9. The test is not whether the police could have secured a search warrant but whether the search was reasonable. *Cooper v California,* 386 US 58, 62; 87 S Ct 788; 17 L Ed 2d 730 (1967).

Our review of the record convinces us that the Arizona officers were justified in conducting an immediate search of defendant's suitcases. The circumstances at the time of the search were sufficiently exigent to make this course of action entirely reasonable. The suitcases had already been checked for passage to Kalamazoo. Both de-

---

certain foundational requirements. *People v Norwood,* 70 Mich App 53; 245 NW2d 170 (1976), *lv den* 397 Mich 884 (1976), *People v Harper,* 43 Mich App 500; 204 NW2d 263 (1972), *lv den* 389 Mich 759 (1973). Tracking dog evidence standing alone, however, is insufficient to support a conviction. *People v McPherson,* 85 Mich App. 341; 271 NW2d 228 (1978), *People v Perryman,* 89 Mich App 516; 280 NW2d 579 (1979). In *McPherson,* the Court examined the arguments against admission of tracking dog evidence and found therein several reasons for the necessity of corroborating evidence. Among the principal objections to the use of tracking dog evidence are the defendant's inability to cross-examine the dog and the deprivation of the defendant's right to confront his accusers. Also significant is the court's inability to determine why the dogs act as they do. 85 Mich App 345-346, citing 18 ALR3d 1221, 1223-1224. These objections are not relevant to the testimony of humans who are available for cross-examination. *McPherson* implicitly recognizes that the corroborating evidence rule would not apply if tracking dogs were capable of understandingly taking an oath, describing their credentials and experience, and detailing the stages of their investigations. We are not persuaded that the sense of smell of humans cannot be used to establish probable cause or that the "self-serving" testimony of the person doing the smelling is inherently unreliable.

fendant and his luggage were scheduled to depart shortly. Only 32 minutes passed between the time defendant was seen entering the airport and the scheduled departure time of the plane.

This case is similar to the Maryland case of *Waugh v State,* 20 Md App 682; 318 A2d 204 (1974), *rev'd on other grounds* 275 Md 22; 338 A2d 268 (1975),[2] where the Maryland Court of Special Appeals noted that it would have been impractical for the Arizona police to obtain a warrant for search of the defendant's suitcases which were to leave shortly for Maryland. The Maryland court also rejected the notion that the police who opened the defendant's suitcases in Arizona should have requested the airline to hold the luggage or should have relied on the police at the end of the flight to obtain search warrants.[3] See also *United States v*

[2] In reversing the earlier decision in *Waugh,* the Maryland Court of Appeals found that the Arizona search was invalid because based on insufficiently verified informant information and that the Arizona officer had not smelled marijuana in the defendant's suitcases but had only smelled talcum powder, in itself not an unusual item in a suitcase. The Arizona officers had not had even reasonable ground to search the suitcases.

[3] The *Waugh* court's analysis was based on its holding that a warrantless search of a suitcase is constitutionally permissible whenever there is probable cause to believe it contains contraband or other evidence of crime and there are exigent circumstances requiring immediate search. 20 Md App 682, 699. Our analysis is like that of the Maryland court. In our view, *United States v Chadwick, supra,* confirmed the validity of this analysis. Although the Supreme Court declined to treat luggage in the same manner that automobiles are treated for Fourth Amendment purposes, the Court repeatedly emphasized that, if some exigency exists, warrantless searches of luggage may be permissible. *United States v Johnson,* 588 F2d 147 (CA 5, 1979), is, we think, in accord with this interpretation of *Chadwick.*

The United States Supreme Court has recently reaffirmed its *Chadwick* decision. In *Arkansas v Sanders,* 47 USLW 4783 (June 20, 1979), the Supreme Court declined to extend the warrant requirement's "automobile exception" to all searches of luggage taken from automobiles stopped on the highway. The Court specifically recognized, however, that, "there may be cases in which the special exigencies of the situation would justify the warrantless search of a suitcase." *Id.,* 4786, fn 11. The state conceded in *Sanders* that no special exigencies had existed. Moreover, the Court noted the possibly significant cir-

*Ford,* 525 F2d 1308, 1313 (CA 10, 1975). We conclude that the trial court's refusal to suppress evidence of the Arizona search was correct.

Defendant's next challenge is to the admissibility of evidence obtained as a result of the opening of his suitcases by the police in Michigan. It is not disputed that no warrant had been obtained by the Michigan authorities and that defendant did not consent to any. search of his suitcases by the Kalamazoo police.

If we were to view the Michigan warrantless searches in isolation from the totality of circumstances, we would be perhaps constrained to find them constitutionally infirm on the basis of *United States v Chadwick, supra.*[4] However, we decline to accept defendant's apparent contention that the opening of his suitcases in Michigan must be viewed as separate and distinct from what occurred in Arizona.

In *United States v DeBerry,* 487 F2d 448 (CA 2, 1973), the defendants challenged the seizure in New York of a suitcase containing marijuana first discovered in a California search. The Second Circuit panel first found no infringement of Fourth Amendment rights in the inspection of the luggage by a Los Angeles air freight supervisor. The supervisor found 15 bricks of marijuana in the suitcase.

cumstance of luggage about to be loaded into an airplane; the public safety may require warrantless searches of such luggage. *Id.,* 4786, fn 12.

Although "public safety" concerns were not necessarily involved in the instant case, we nonetheless are of the opinion that the requisite special exigencies have been established.

[4] Because of our disposition of the Michigan "search" issue, we need not discuss the retroactive applicability of *Chadwick.* Nor need we determine if, when viewed in isolation, the Michigan activity amounted to a *Chadwick* search. See, *e.g., People v De Santis,* 46 NY2d 82; 412 NYS2d 838; 385 NE2d 577 (1978). And finally, discussion of the relevance of the "automobile exception" in luggage cases is unnecessary to our disposition.

He notified the Los Angeles police, who inspected the bag and relayed the information to New York authorities. The bag was placed under surveillance upon its arrival in New York. It was eventually seized when the defendants, who had picked it up at the New York airport, were arrested. Noting the 15-hour prearrival notice given by the Los Angeles police, the Court rejected the government's contention that it would have been "unduly burdensome" for the New York authorities to obtain a search warrant. *Id.,* 450-451, fn 3. Nevertheless, the Court ruled that the New York authorities need not have obtained a search warrant:

"It may be argued that the New York seizure was separate and distinct from the California search, and because there was ample opportunity for the New York officers to obtain a warrant for the suitcase's seizure, its warrantless seizure violated the fourth amendment. *See* Coolidge v New Hampshire, 403 U.S. 443, 470-471, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971). This, however, would ignore the facts and realities of the situation. The suitcase was seized initially in California by Sergeant Figelsky of the Los Angeles Police Department. That seizure although done without warrant was legal, because Emery's legal inspection in effect put the marijuana in Figelsky's plain view; he, therefore, could seize the contraband upon sight. *Cf.* United States v. Riggs, 474 F.2d 699 (2d Cir. 1973), cert. denied, 414 U.S. 820, 94 S. Ct. 115, 38 L. Ed. 2d 53 (1973). Figelsky made the seizure by removing one of the bricks of marijuana, marking all of the rest of the bricks with his initials, and finally marking the suitcase itself with his initials. He then authorized the suitcase to be shipped on. *Even though the suitcase was then in transit, later in the luggage bin, and later still in the freight room, it remained legally "seized" just as much as if it were under the actual physical control of the police. In fact, except for the time that it was actually in the airplane's belly, it was under the close surveillance of the police. Thus, when the agents and police in New York*

removed *the bag from the back seat of the car appel-*
*lants were in, they were not making an initial seizure,*
*but rather were merely reasserting control of the suit-*
*case which had already been seized for legal purposes*
*and which was merely being used as bait.* Accordingly,
no warrant was required." *Id.,* 450-451. (Footnotes omit-
ted, emphasis added.)

In accord is *United States v Ford, supra,* where
the Court rejected the defendant's assertion that
an Oklahoma seizure was separate and distinct
from a California search and further rejected the
argument that, since there was time to obtain a
warrant before the Oklahoma seizure, the failure
to do so violated the Fourth Amendment. Finding
that the defendant's "analysis misapprehend[ed]
the facts and realities of the situation", the Court
stated:

"Realistically, the contraband was seized by the
officers in California before it was ever shipped to
Oklahoma. See *United States v. DeBerry,* 487 F.2d 448
(2d Cir. 1973). The California officers marked the pack-
age and placed a business card inside it. Upon receiving
assurances of cooperation from Oklahoma City officers,
they authorized its shipment. This action constituted
the initial act of control and dominion over the contra-
band, for without government authorization the airline
officials could not have shipped the contraband. This
official dominion continued unbroken because close sur-
veillance followed the seized contraband, insuring that
it remain within official possession. Actual physical
control was in fact reasserted by the Oklahoma City
police when the arrest process was completed. These
material facts are indistinguishable from *DeBerry,* su-
pra, and we adopt the analysis of that case in conclud-
ing that the official seizure of the contraband occurred
in San Francisco when the government asserted domin-
ion over it. The seizure must be judged against the
Fourth Amendment as of that time and place." 525 F2d
1308, 1312-1313.

Also see *Waugh v State, supra,* 20 Md App 682, 708-709, and *State v Pohle,* 160 NJ Super 576, 583; 390 A2d 692 (1978).

We conclude that the reopening of defendant's suitcases in Michigan was not a prohibited "search". The police, in effect, exercised continuous control over the suitcases from the time of the Arizona search until defendant's arrest in Michigan. As discussed, *supra,* there was no constitutional violation in the Arizona search.

Defendant also argues on appeal that the trial court erred in denying his motion to dismiss on the grounds that the prosecution failed to endorse and produce one of the Arizona officers. Only three of the four Arizona officers were produced at trial. After hearing the parties' arguments, the trial court ruled that the missing officer was not a res gestae witness and that, even if he were, his testimony would be merely cumulative.

We disagree with the trial court's determination that the missing Arizona officer was not a res gestae witness. *People v Abdo,* 81 Mich App 635, 643; 265 NW2d 779 (1978). Defendant is entitled to a determination of whether nonproduction adversely affected his right to a fair trial. *People v Pearson,* 404 Mich 698; 273 NW2d 856 (1979).

Review of the record, however, reveals that such a determination has already been made and that no reversible error occurred. Compare *People v Porter,* 406 Mich 890 (1979). The record fully supports the trial court's conclusion that the witness's testimony would have been merely cumulative.

We have considered the remaining issue raised by defendant on appeal and find no reversible error with respect to that issue.

Affirmed.