PEOPLE v CHARLES BROWN

ARREST—FORCIBLE ENTRY—ANNOUNCEMENT OF PURPOSE—SUBSTAN-
TIAL COMPLIANCE.

> Substantial compliance with the statute requiring an announce-
> ment of purpose before forcible entry to make an arrest is all
> that is necessary, and where a police officer goes to the door of
> an apartment in the course of an investigation for armed
> robbery, knocks on the door and announces twice that "It's the
> police", hears sounds indicating that a person inside is running
> to the rear of the apartment and other suspicious sounds, and
> then forces the nightlatch on the apartment door and goes
> inside, he has substantially complied with the terms of the
> statute (MCLA 764.21).

Appeal from Recorder's Court of Detroit, Nicho-
las J. Lambros, J. Submitted Division 1 May 9,
1972, at Detroit. (Docket No. 12435.) Decided Sep-
tember 27, 1972.

Charles Brown was charged with armed robbery.
Defendant's motion to suppress certain evidence
was granted. The people appeal by leave granted.
Reversed and remanded for trial.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Dominick R. Carnovale,*
Chief, Appellate Department, and *Leonard Mey-
ers,* Assistant Prosecuting Attorney, for the people.

*Kenneth H. Lynn,* for defendant on appeal.

REFERENCE FOR POINTS IN HEADNOTE
5 Am Jur 2d, Arrest § 86 *et seq.*

Before: DANHOF, P. J., and LEVIN and BORRA-
DAILE,* JJ.

BORRADAILE, J. The parties agree that the issue
on appeal is whether the trial court erred in
ruling that certain evidence found on the defend-
ant and in his immediate vicinity at the time of
his arrest was inadmissible because the arresting
officers did not declare their purpose prior to a
forcible entry into the defendant's apartment.

A concise statement of the proceedings and facts
has been certified. The substance of the statement
follows.

The defendant was arraigned on a warrant for
robbery armed on August 2, 1968. Bond was set in
the amount of $5,000, with two sureties.

On August 9, 1968, preliminary examination
was waived.

On May 6, 1969, a competency hearing on mo-
tion of the defendant's attorney was held and the
defendant was found incompetent and ordered
committed to the Department of Mental Health
for a period not to exceed 18 months.

On September 8, 1970, on recommendation of
the Director of the Center for Forensic Psychiatry,
the court ordered the defendant returned to the
Wayne County Jail to await further disposition.

On October 20, 1970, preliminary examination
was held and the defendant was bound over for
trial on the charge of robbery armed. On the same
date the defendant was arraigned on the informa-
tion and bond was continued at $5,000, with two
sureties.

After several trial dates were adjourned, trial
was set for May 10, 1971. From May 10, 1971,
through May 13, 1971, the defendant's motion to

---

* Former circuit judge and now probate judge, sitting on the Court
of Appeals by assignment.

suppress certain evidence was heard and after testimony and oral argument the court ruled in favor of the defendant's motion to suppress. Accordingly, a revolver, a shoulder holster, and several live rounds of ammunition allegedly seized at the time of the defendant's arrest were ruled inadmissible.

The defendant's motion to dismiss because of an illegal arrest was denied. The trial judge granted a stay of proceedings pending appeal by the people of the order granting the motion to suppress.

At the preliminary examination Marion Barber testified that he was the assistant manager of Michigan Estates Furniture and that about 9 a.m. on July 22, 1968, a man with a revolver robbed him of between $140 to $150. He further testified that the bandit was on the premises approximately 20 to 25 minutes and he identified the defendant as the person who committed the robbery. He further testified that the defendant fired a shot in the store. On cross-examination the witness testified that between $70 and $80 in cash was taken by the defendant. This money belonged to the store.

At the hearing on the motion to suppress evidence, Jackie Morton testified that he was a Detroit police officer on July 29, 1968, and had received a radio message to meet a second precinct cruiser at Commonwealth and Grand River. He further testified that he met the second precinct cruiser and put a Ford automobile under surveillance because it fit the description of the car that had been used in an armed robbery. This information had been obtained from a teletype and from another police officer. The Ford was kept under surveillance until midnight and on July 30, 1968, they sent for registration to Lansing and learned

that the car was registered to Charles Brown, 6613 Vinewood.

Jackie Morton then testified that he went to 6613 Vinewood and talked to the sister of Charles Brown at that address. He further testified that as a result of a conversation at the location of the car on Commonwealth, north of Grand River, he went to 3974 Commonwealth to look for Saboo Sa Bora at apartment A-4. There being no answer, he went to the Checker Cab Company headquarters on Trumbull, having information that Saboo Sa Bora was employed there as a driver. He was advised that no such person was listed as a driver but that a Charles Brown was employed as a driver and his address was 6613 Vinewood.

He testified that he eventually went to the vicinity of 3974 Commonwealth and stayed in that area to locate a cab that was supposed to have been driven by Charles Brown, and that when a Checker Cab arrived he knocked on the door of apartment 4. He testified that someone on the inside asked who it was, and that the witness and his fellow officers answered "It's the police".

The witness then testified that the person inside of the room again asked who it was and that the police responded by telling him it was the police. The witness then testified that he heard a running noise that ran to the rear of the apartment; that there were footsteps away from the door. The witness testified that when he heard the footsteps running from him, he opened the door. He testified that the door was open and not locked. He further testified that the door had a chain nightlatch. The witness testified he heard noises from the back of the apartment, noises which sounded like the back of the toilet. As a result of these noises and the steps going away from him, he testified that he forced the door of the apartment and got inside.

The witness testified that when he got inside the apartment he went to the living room where the door enters the kitchen and the bathroom goes off the kitchen, and heard a noise and that the defendant came out of the bathroom to the kitchen table and picked up a knife. He testified that he told the defendant to drop the knife and that the witness stepped into the bathroom and looked at the toilet tank. He testified that the back of the toilet tank top had been knocked off and he looked inside and saw a revolver in the back of the tank. He removed the revolver from the tank, describing it as a .38-caliber nickel-plated revolver, serial number 0109164, which he ticketed and placed in the police property room.

On cross-examination the witness testified that he had no warrant to search the premises nor did he have a warrant for the arrest of Charles Brown. The witness testified that he went to the bathroom and searched the premises and that the defendant was about three steps out of the bathroom. The witness further testified that the defendant was arrested for robbery armed of a furniture store on Grand River and that his person was searched at that time. The police removed a shoulder holster from the defendant and confiscated three live rounds of .38-caliber ammunition. The witness also testified that there was one spent round in the defendant's pocket.

The trial court held that the arresting officers had reasonable grounds to believe that the defendant had violated the law relating to armed robbery and determined that the arrest of the defendant was not unlawful and was made with probable cause. However, the trial court held that the forcible entry was illegal in that it did not conform to MCLA 764.21; MSA 28.880 because there was no

declaration by the officer as to his purpose prior to breaking in the door. The defendant's motion to suppress the evidence was granted.

On May 20, 1971, the plaintiff requested a transcript of the motion-to-suppress proceedings.

On July 12, 1971, the plaintiff's motion to extend time within which to file the people's application for leave to appeal was granted by the trial court.

On September 3, 1971, the Court of Appeals granted the plaintiff's motion for extension of time to complete the application for leave to appeal.

On September 27, 1971, the people filed a motion in the Court of Appeals for a further extension of time to November 11, 1971, so as to enable the people to perfect the application for leave to appeal inasmuch as the transcript of the motion-to-suppress proceedings had not been filed by the court reporter.

The court reporter filed the transcript of the motion-to-suppress hearing on October 1, 1971.

The prosecution argues that a declaration of purpose is implicit in a declaration of identity and that when the police officers twice knocked on the defendant's apartment door and said "It's the police", before breaking in, there was substantial compliance with the Michigan statute on forcible entry.

The statute, MCLA 764.21; MSA 28.880, reads:

"To make an arrest, a private person, if the offense be a felony committed in his presence, or a peace officer with a warrant or in cases of felony when authorized without a warrant, may break open an inner or outer door of any building in which the person to be arrested is or is reasonably believed to be if, after he has announced his purpose, he is refused admittance."

In lieu of any Michigan cases construing the statutory language "after he has announced his purpose", the people rely on *United States v Alexander,* 346 F2d 561 (CA 6, 1965), *cert den,* 382 US 993; 86 S Ct 575; 15 L Ed 2d 480 (1966); *United States v Harris,* 391 F2d 384 (CA 6, 1968); and *United States v Sharpe,* 322 F2d 117 (CA 6, 1963). Both the *Alexander* and *Harris* cases held that the Michigan statute, MCLA 764.21, *supra,* controls whether the forcible entry itself was illegal, citing *Ker v California,* 374 US 23; 83 S Ct 1623; 10 L Ed 2d 726 (1963), and *United States v Wood,* 341 F2d 103 (CA 6, 1965).

In *Alexander,* agents of the Federal Bureau of Narcotics had in their possession a Federal warrant for the arrest of Trudy Lewis. They had information from an informant that she was living in a second floor rear apartment at 254 Frederick Street in Detroit. Federal agents placed the building under surveillance for about an hour. One of the two upper rear apartments was dark. Two agents knocked on the door of the lighted apartment. A man on the inside came to the door, pulled the shade aside, and asked "Who is there?" One of the agents identified himself as a Federal narcotics officer and the man inside dropped the shade and his footsteps were heard retreating from the door. Upon receiving no answer to a second request for admission, the agents immediately made a forcible entry. One of the agents heard the sound of running water in the bathroom and upon entering that room caught Alexander leaning over the bathtub washing capsules down the drain. Alexander was placed under arrest and a capsule containing heroin was found on the floor beside him. The agents did not have a search warrant and Trudy Lewis was not found on the premises at

the time. The Sixth Circuit Court of Appeals held that the forcible entry was in compliance with the Michigan statute, stating that relying upon the information given by the informant, the agents had reasonable grounds to believe that Trudy Lewis was on the premises, and further that it was not contradicted that the agents adequately identified themselves to the party inside the door. Although the agents made no announcement of their purpose, to serve a warrant of arrest on Trudy Lewis, the Court found compliance with the statute, saying, "We have held that in a case such as this a declaration of purpose is implicit in a declaration of identity", citing *United States v Sharpe, supra.*

The close factual similarity between the *Alexander* case and the present one should be noted. In both cases the officers and agents knocked on the door of an apartment that had been under surveillance and where they had reason to believe the person they were attempting to arrest was residing. In both cases in response to a question from someone inside the apartment, the officers and agents identified themselves. In both cases the officers and agents identified themselves a second time and heard footsteps retreating before they made a forcible entry. No meritorious distinction between the cases exists on the basis of the agents in the *Alexander* case having a warrant for the arrest of Trudy Lewis since the announcement-of-purpose provision of the statute applies regardless of whether the peace officer has a warrant or not, and further in the *Alexander* case the arrest warrant was for Trudy Lewis, not for the defendant, Alexander.

The defendant in the present case argues that there is a valid distinction between the cases,

however, based on the fact that the *Alexander* case and also the *Sharpe* case, *supra,* involved narcotics and the agents identified themselves as Federal narcotics officers and agents, whereas in this case an armed robbery is the charge and the officers identified themselves as police. The defendant contends that when arresting officers identify themselves as Federal narcotics officers, a declaration of purpose to arrest is implicit but that there is no implied declaration of purpose to arrest when the arresting officers identify themselves as police. This possible distinction is of doubtful merit since narcotics agents may make inquiries in pursuance of an investigation just as local police officers may. The fact that a narcotics agent knocks at your door doesn't necessarily mean that he is there to make a search or to arrest you. It should also be remembered that in *Alexander* when one of the arresting officials identified himself as a Federal narcotics officer, he was there with an arrest warrant for Trudy Lewis. He did not go to the apartment for the purpose of arresting Alexander for possession of narcotics.

The defendant cites only *Miller v United States,* 357 US 301; 78 S Ct 1190; 2 L Ed 2d 1332 (1958), in support of his position that the forcible entry in this case was illegal. *Miller* also involved Federal narcotics offenses. The officers had no arrest or search warrant and they did not expressly demand admission or state their purpose. What one officer did do after knocking at Miller's apartment and hearing from within the query "Who's there?" was to reply in a low voice "police". The officers could not tell if Miller heard the reply. Miller opened the door on an attached door chain and asked what they were doing there. The officers did not appear to have been in uniform. Before either officer responded, Miller attempted to close the

door. At this point the two officers forcibly entered the apartment. Although the case arose in the District of Columbia and the Supreme Court stated that the validity of the entry to make the arrest was to be determined by reference to the law of the District of Columbia, no question regarding application of the District of Columbia Code was raised. Instead the parties agreed that the validity of the entry to execute the arrest without warrant must be tested by criteria identical with those in 18 USC 3109 dealing with entry to execute a search warrant.

18 USC 3109 reads:

"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

The government argued that the officers had complied with the requirements. The Court, noting that there was no claim of exigent circumstances justifying non-compliance, such as where the officers believed that they or someone within is in peril of bodily harm, or that a person to be arrested is fleeing or attempting to destroy evidence, made no determination whether the requirements admitted of any such exception. Instead the Court stated that the rule seemed to require notice in the form of an express announcement of the officers' purpose for demanding admission. The Court did recognize that there might be cases in which the facts known to the officers would justify them in being virtually certain that the defendant already knew their purpose so that an announcement would be a useless gesture. The Court held,

however, that this was not such a case. In concluding that the officers had failed to give the required notice of purpose before making the forcible entry, the Court said: ,

"We are duly mindful of the reliance that society must place for achieving law and order upon the enforcing agencies of the criminal law. But insistence on observance by law officers of traditional fair procedural requirements is, from the long point of view, best calculated to contribute to that end. However much in a particular case insistence upon such rules may appear as a technicality that inures to the benefit of a guilty person, the history of the criminal law proves that tolerance of short-cut methods in law enforcement impairs its enduring effectiveness. The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application. Congress, codifying a tradition embedded in Anglo-American law, has declared in § 3109 the reverence of the law for the individual's right of privacy in his house.

"Every householder, the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house. The petitioner could not be lawfully arrested in his home by officers breaking in without first giving him notice of their authority and purpose. Because the petitioner did not receive that notice before the officers broke the door to invade his home, the arrest was unlawful, and the evidence seized should have been suppressed." *Miller v United States,* 357 US 301; 78 S Ct 1190; 2 L Ed 2d 1332 (1958).

The *Miller* case does appear, at least initially, as persuasive law in support of the defendant's position that it was illegal for the officers to make a forcible entry in this case without first making an express announcement of purpose. In both cases the prosecution argued compliance, not circumstances justifying non-compliance. However, the

*Miller* case is not actually controlling authority since it was based on a Federal statute, not the Constitution. *People v Doane,* 33 Mich App 579 (1971). Further, the *Alexander* case, *supra,* was decided seven years after the *Miller* case and the Supreme Court denied certiorari in it.

In *United States v Sharpe,* 322 F2d 117 (CA 6, 1963), the Court, although it cited the *Miller* case, apparently did not find it controlling on the question of an express announcement of purpose. In that case agent Irvin was attempting to make an arrest without a warrant. He knocked on the apartment door and said: "Irvin, Federal Narcotics Agent". There was a noise near the door and a statement from within, "Quick, the back door". Immediately, agent Irvin forcibly entered the apartment. The Court said the principal issue was whether agent Irvin substantially complied with the requirements of declaration of identity and purpose for arrest without a warrant. The Court held that it was a reasonable conclusion that a declaration of purpose was implicit in the declaration of identity. Further, the Court said that the circumstances called for quick action to avoid the peril of destruction of evidence. Continuing, the Court stated (p 120):

"Whether this be classed as an exigent circumstance excluding compliance with a specific declaration of purpose, or was in fact a substantial compliance because the occupants comprehended the purpose from Agent Irvin's declaration of identity, is a question of classification.

"However, under either classification the actions, the forcible entry and subsequent arrest by the officers, were reasonable. *Miller v United States* and *Ker v State of California, supra.*

"Therefore, neither federal nor state law, statutory,

decisional or common law, was violated by the officers in this case."

Thus it can be seen that despite the holding in the *Miller* case that an express announcement of purpose was necessary, the Sixth Circuit Court of Appeals found a declaration of purpose implicit in the declaration of identity, and further that it would be reasonable to find substantial compliance because the occupants comprehended the purpose from the declaration of identity.

In *United States v Harris,* 391 F2d 384 (CA 6, 1968), somewhat the reverse factual situation was presented. There the facts seem to be that in attempting to make a warrantless arrest a police officer knocked on an apartment door and twice said "John L. Harris, you're under arrest for State Narcotics Law. Open the door". Meanwhile a person was shouting "Police" a short distance away. The police made a forcible entry after hearing movement inside the apartment but no verbal response. The defendant argued that the police failed to comply with MCLA 764.21, *supra,* since there was no announcement of identity or authority by the police. The Court held:

"An announcement of authority is not explicitly required by section 28.880, MSA, as it is under 18 USC § 3109 (1951). Moreover, even were such an announcement necessary, the converse of the well settled principle that a 'declaration of purpose is implicit in a declaration of identity,' *(United States v Alexander, supra,* 346 F2d at 562; *United States v Sharpe,* 322 F2d 117 [6th Cir, 1963]) would clearly be applicable here."

In *People v Doane, supra,* this Court construed a cognate Michigan statute, MCLA 780.656; MSA 28.1259(6), which reads:

"The officer to whom a warrant is directed, or any person assisting him, may break any outer or inner door or window of a house or building, or anything therein, in order to execute the warrant, if, after notice of his authority and purpose, he is refused admittance, or when necessary to liberate himself or any person assisting him in execution of the warrant."

In *Doane* a detective, after making a marijuana purchase, knocked on the door and said: "Police officers—open up". The officers saw the defendant and his wife looking at them through the window. When they did not open the door, the officers made a forcible entry. Although the officers did not state that their purpose was to conduct a search of the premises, this Court held that there was a substantial compliance with the statute. The Court considered the analogous situation of a forcible entry to make an arrest where a declaration of purpose has been held to imply a declaration of identity, and cited *United States v Alexander, supra, United States v Sharpe, supra,* and *United States v Freeman,* 144 F Supp 669 (D DC, 1956). It should be noted that there was nothing in the announcement of identity and demand for admittance that suggested that this was a search for narcotics.

In *United States v Freeman,* a case involving gambling paraphernalia, an officer armed with a search warrant knocked on the door and rang the doorbell for several minutes. He received no response. He then called out the word "Police", and when he still received no reply, he forcibly entered. The court held:

"It is claimed in support of the motion that the officer's own testimony shows that he failed to comply with the statute in that he did not give notice of his authority and purpose. *In matters of this kind substantial compliance is all that is required.* He knocked on

the door and he gave notice of his authority in that he announced that it was the police who were seeking entry. To be sure, he did not specifically state that he was there to execute a search warrant or a warrant of arrest. *It seems to the Court, however, that the announcement that the police were seeking to enter would give notice to a reasonable person that the purpose of seeking the entry is either to make an arrest or to make a search and that it was not just a social visit."* (Emphasis added.)

In *People v Livermore,* 9 Mich App 47 (1967), State Police troopers identified themselves and requested admittance to a tent where they believed an act of gross indecency was taking place. A continuing silence was the only response from within the tent. This Court held, without citation of statute, that the entry was legal, although there was apparently no declaration of purpose.

Total non-compliance was upheld in *Gilbert v United States,* 366 F2d 923 (CA 9, 1966), *cert den,* 388 US 922; 87 S Ct 2123; 18 L Ed 2d 1370 (1967), and 393 US 985; 89 S Ct 460; 21 L Ed 2d 446 (1968). In that case FBI agents and local police broke into an apartment armed with shotguns and pistols without giving any notice of identity or purpose because of the possible presence of an armed robber and murderer. Relying on a California statute stating an exception where compliance "might have alerted the suspect and increased the officers' peril" the California Supreme Court had held the entry lawful. The Ninth Circuit Court of Appeals said that this appeared to be the common law rule and that a similar exception should be read into 18 USC 3109.

It seems clear that in perilous circumstances such as the *Gilbert* case, *supra,* total non-compliance with statutory requirements of identification and announcement of purpose should be lawful

exceptions. However, when substantial compliance is sought to be justified on a similar basis, a flaw in the logic appears. To argue that merely announcing identity but not purpose is justified as substantial compliance in cases where the person inside may destroy evidence, or arm himself with a dangerous weapon, or flee, is faulty logic. If the person beyond the door is going to do any of those things, he will probably do them with the same promptness and success whether the officer limits his remarks to "Police", or whether he expands on them and says "Police. We are here to make an arrest", or "search". Requiring the officer to expressly state both his identity and purpose does not materially increase his peril or add to the likelihood of flight or the destruction of evidence over requiring the officer to state just his identity *or* purpose.

Rationally, substantial compliance can be justified on the basis that the purpose of the statute, to give an occupant the opportunity to open the door rather than have the police break in, is met by an announcement of either identity or purpose and that a declaration of one implies the other. But if a Court adopts the substantial compliance interpretation, it ought not to further distinguish cases on the basis of whether they involve narcotics by saying that in those cases only, substantial compliance will apply because the narcotics may be so readily destroyed. As stated before, it is not reasonable to suppose that whether the officer says "Police" or "Police. We are here to make an arrest" will have any measurable effect on the frequency with which the person addressed attempts to dispose of evidence, or on the success of such attempt. Further, in cases involving murder or armed robbery, partial compliance creates just as

much danger for the officer as total compliance since both give sufficient notice to the occupant so that he can arm himself if so inclined. It should be remembered that in the present case, after the statement of identity and the forcible entry, the defendant may have tried to get a revolver out of the toilet tank in the bathroom and did in fact pick up a knife in the kitchen.

Thus the logical approach to these forcible entry cases is to either require total compliance with the statute as in *Miller v United States, supra,* except in cases justifying total non-compliance as in *Gilbert v United States, supra,* or to adopt substantial compliance as the measure as in *United States v Alexander, United States v Sharpe, United States v Harris, United States v Freeman, People v Doane,* and *People v Livermore,* all *supra,* regardless of whether the case involves narcotics, gambling paraphernalia, armed robbery, or some other crime. Since this Court and the Sixth Circuit Court of Appeals have already adopted substantial compliance as the measure, we hold that in the present case the arresting officers met that standard and the forcible entry thereafter was lawful.

The issue of probable cause to arrest the defendant, which was raised below and there decided against the defendant, was not briefed on appeal by the prosecutor or the defendant's lawyer. Since it was not briefed, we need not consider it. The order of the trial court granting defendant's motion to suppress the evidence is set aside and the case is remanded for trial.

All concurred.