PEOPLE v MARSH

Docket No. 49483. Submitted April 13, 1981, at Lansing.—Decided August 18, 1981.

David Marsh was convicted of first-degree murder, assault with intent to commit murder, and armed robbery, Eaton Circuit Court, Richard Robinson, J. He appeals. *Held:*

1. The trial court properly conducted an in-chambers questioning of prospective jurors in the presence of the prosecutor and defense counsel. The fact that the defendant was not present does not constitute error, there being no reasonable possibility that prejudice to the defendant resulted.

2. The trial court properly refused to dismiss certain jurors

REFERENCES FOR POINTS IN HEADNOTES

[1] 21A Am Jur 2d, Criminal Law §§ 695, 913.

[2] 47 Am Jur 2d, Jury § 294.

[3] 5 Am Jur 2d, Appeal and Error § 889.

[4] 5 Am Jur 2d, Appeal and Error § 875.
   21 Am Jur 2d, Criminal Law § 372.

[5] 21 Am Jur 2d, Criminal Law § 389.
   Pretrial publicity in criminal case as ground for change of venue. 33 ALR3d 17.

[6] 81 Am Jur 2d, Witnesses §§ 592, 594.
   Construction and application of Rule 608(b) of Federal Rules of Evidence, dealing with use of specific instances of conduct to attack or support credibility. 36 ALR Fed 564.

[7] 47 Am Jur 2d, Jury §§ 200-203.

[8] 68 Am Jur 2d, Searches and Seizures § 91.
   What constitutes compliance with knock-and-announce rule in search of private premises—state cases. 70 ALR3d 217.

[9] 68 Am Jur 2d, Searches and Seizures §§ 64, 66.
   Disputing matters stated in supporting affidavit for search warrant. 5 ALR2d 394.

[10] 5 Am Jur 2d, Appeal and Error § 773.

[11] 21A Am Jur 2d, Criminal Law § 844.
   Propriety and prejudicial effect of gagging, shackling, or otherwise physically restraining accused during course of state criminal trial. 90 ALR3d 17.

for cause, and reversal is not warranted, no bias on the part of the jurors having been shown.

3. The trial court properly denied the defendant's motion for a change of venue.

4. The trial court erred in ruling that evidence of a witness's prior criminal activity which did not result in a conviction could not be introduced for purposes of impeachment where the witness admitted to having engaged in the activity. But the error was harmless beyond a reasonable doubt.

5. The trial court's voir dire of prospective jurors was proper.

6. The trial court properly denied the defendant's motion to quash the information and suppress evidence seized as a result of a police search. The unannounced entry into the defendant's motel room was justified by exigent circumstances.

7. The record reveals that the affidavit made in support of obtaining the search warrant was sufficient to support a finding of probable cause to issue the warrant.

8. The trial court's denial of the defendant's motion for mistrial was proper and was not so grossly in error as to deprive the defendant of a fair trial or to amount to a miscarriage of justice.

9. The trial court properly admitted evidence on redirect examination of a witness to rebut an impression made by the witness's testimony during cross-examination. The evidence did not go beyond the scope of the cross-examination.

10. The trial court did not err in failing to declare a mistrial or to give cautionary instructions to the jury on the alleged ground that certain members of the jury saw the defendant in handcuffs. The defendant failed to request an evidentiary hearing on the matter or request an instruction. In addition, the record fails to support the allegation.

Affirmed.

1. CRIMINAL LAW — TRIAL — APPEAL — PRETRIAL EXAMINATION OF JURORS.

In-chambers questioning of prospective jurors by a trial court in the presence of the prosecutor and defense counsel but not in the presence of a defendant does not constitute error requiring reversal where the questioning concerned possible prejudice on the part of the prospective jurors because of pretrial publicity and, based on the surrounding circumstances, there was no reasonable possibility that prejudice to the defendant would result.

2. CRIMINAL LAW — DISMISSAL OF JURORS — STATUTES.

A trial court may excuse for cause jurors who have formed an opinion with respect to the circumstances of a criminal prosecution or the guilt or innocence of the accused; however, where a juror declares under oath that he can render an impartial verdict according to the evidence and the trial court is satisfied that the juror does not entertain an opinion which would influence his verdict, any prior knowledge of the facts of the case which the juror may have is an insufficient ground for challenge (MCL 768.10; MSA 28.1033).

3. APPEAL — CRIMINAL LAW — BIASED JURORS.

A defendant in a criminal prosecution who alleges on appeal that the jury was biased bears the burden of showing the bias.

4. CRIMINAL LAW — VENUE — JUDICIAL DISCRETION.

The grant or denial of a motion for a change of venue is within the discretion of the trial court, and on appeal the decision of the trial court will not be overturned absent a clear abuse of discretion.

5. CRIMINAL LAW — VENUE — PRETRIAL PUBLICITY.

The mere existence of adverse pretrial publicity and the likelihood that a jury was exposed thereto does not necessitate a change of venue; the burden of proof rests on the defendant to show that the jurors have a preconceived opinion as to his guilt.

6. EVIDENCE — CHARACTER OF WITNESSES.

A trial court, in its discretion, may permit inquiry into specific incidents of a witness's conduct which are probative of his truthfulness (MRE 608[b]).

7. CRIMINAL LAW — TRIAL — JURY VOIR DIRE.

Questioning of prospective jurors by a trial court during voir dire relative to any bias which they may have toward a witness-accomplice because he was granted immunity from prosecution of the crime is proper where it does not entrap, influence, commit, or obligate the jurors to find the witness's testimony to be credible.

8. SEARCHES AND SEIZURES — UNANNOUNCED ENTRY — STATUTES.

An unannounced entry into a suspect's residence by a police officer seeking to effectuate an arrest may be justified on the basis of exigent circumstances; an officer need not announce his presence where such declaration would be futile or an unnecessary formality or would permit the suspect to escape justice,

endanger the life or safety of the officer or the public, or lead to the destruction of material evidence (MCL 764.21; MSA 28.880).

9. SEARCHES AND SEIZURES — SEARCH WARRANTS — AFFIDAVITS — INACCURATE STATEMENTS — EVIDENCE.

Statements by an affiant made in support of a request for the issuance of a search warrant may be stricken where shown to have been made in reckless disregard for the truth or to have been deliberate falsehoods and not merely negligent or innocent mistakes; however, even where such a showing is made, the inaccuracies may be considered irrelevant where the remainder of the affidavit is sufficient to support a finding of probable cause to issue the warrant, and evidence subsequently seized properly may be introduced during trial.

10. CRIMINAL LAW — MISTRIAL — APPEAL — JUDICIAL DISCRETION.

A trial court, in its discretion, may grant or deny a motion for mistrial, and on appeal reversal is precluded absent an abuse of discretion.

11. CRIMINAL LAW — APPEAL — HANDCUFFS.

The allegation that jury members may have seen a defendant in handcuffs alone does not require reversal on appeal where the record does not support the contention and the defendant failed to request an evidentiary hearing on the matter or to request a cautionary instruction during trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Paul F. Burger,* Prosecuting Attorney, and *C. Sherman Mowbray,* Assistant Prosecuting Attorney, for the people.

*Thomas S. Eveland,* for defendant.

Before: BASHARA, P.J., and T. M. BURNS and BEASLEY, JJ.

T. M. BURNS, J. Coming before this Court on an appeal as of right, the defendant challenges his December 7, 1979, jury convictions of first-degree murder, MCL 750.316; MSA 28.548, assault with intent to commit murder, MCL 750.83; MSA 28.278, and armed robbery, MCL 750.529; MSA

28.797. On December 27, 1979, the defendant was sentenced to three concurrent terms of life imprisonment for these offenses.

His convictions arose out of a May 12, 1979, incident in which the defendant and one Kevin Moore robbed a Domino's Pizza establishment, killing one person and shooting another. After being given immunity by the prosecutor, Kevin Moore testified that at the request of the defendant he procured his brother's .357-calibre magnum pistol and met defendant in Lansing. After he was shown the escape route by the defendant, Moore and the defendant then went to the defendant's apartment where the defendant picked up his luggage. After driving through the escape route once more, the witness testified that the defendant removed army fatigues from his duffle bag and got into them. The defendant also put on a beret and sunglasses. While the witness parked his car in a car wash close to the pizza establishment and proceeded to wash it so as not to be conspicuous, the defendant took the gun and left for the pizza parlor. Moore testified that a few minutes later he heard three gun shots and saw the defendant running toward the car. The defendant had the gun and a green bag with the name "Domino's" written on it in his possession. Moore asked the defendant if he had killed anyone and the defendant responded that he had. Following the defendant's directions, the witness drove toward Benton Harbor. About 6 a.m., the witness and the defendant got a motel room and counted the money which they had stolen. It amounted to approximately $1,300.

Ronald Bailey, the victim of the assault, testified that he and Jim Kretschman were working at the pizza establishment on the morning of May 12,

1979. At about 3 a.m., someone knocked on the door and said that he was from the northeast store. Because of the noise generated by a fan and a radio, Bailey could not understand exactly what he heard. When he opened the door to find out, a person, whom he later identified in court as the defendant, showed a pistol and announced a robbery.

Instructed by defendant to go into the office, Bailey saw Kretschman, who was there counting money, put all of it in a green bag with "Domino's" written on its side and give it to defendant at his command. The defendant told Bailey and Kretschman to rip the phone out of the wall, but they were unable to do so. He then told them to lie on the floor with Bailey on top of Kretschman. Bailey heard two shots. One struck him between the shoulder blades, and the other struck Kretschman in the head. Bailey testified that the defendant was wearing green army fatigues, dark sunglasses, and a duck-bill cap at the time of the robbery and shooting.

Substantial discrepancies between the testimony of the defendant and Moore occurred at trial. The defendant testified that Moore brought camping equipment, a knife, a gun, and drugs with him to Lansing. The defendant stated that he had not asked Moore to bring the gun. After the defendant had taken one tablet of LSD which Moore had brought with him, Moore inquired about robberies. The defendant indicated that he had a bag with "Domino's" on it because he had worked for that establishment for about three weeks in 1978. Moore questioned the defendant about everything relating to Domino's procedures. Sometime between 1:30 and 2 a.m. on May 12, 1978, the defendant was overcome by the combined effects of

the alcohol and LSD and could barely walk. Moore placed him in a car where he fell asleep. The next thing that he remembered was that he was waking in Benton Harbor. The defendant disclaimed any participation in the murder or robbery and testified that he had never in his life committed an act of violence.

The first claim raised by the defendant in this appeal is that the trial judge erred in conducting an in-chambers questioning of 15 prospective jurors in the presence of the prosecutor and defense counsel but in the absence of the defendant. The questioning concerned the possible prejudice of jurors as a result of pretrial publicity. The jurors were questioned individually, in the presence of counsel, with no objection from the defendant. Our examination of the record convinces us that the defendant's absence from this part of his trial does not require reversal of his conviction because there is no reasonable possibility that it resulted in prejudice. *People v Morgan,* 400 Mich 527, 536; 255 NW2d 603 (1977).

According to the record, five of the jurors questioned in chambers in the absence of the defendant were dismissed for cause on the motion of defense counsel. No error occurred with respect to the dismissal of these prospective jurors because it is unlikely that the defendant would have wanted them on the jury. Juror Fox stated that he would have given more weight to police testimony. Juror Tousley did not believe that the defendant was innocent. Juror Schmidt was excused because she was required to take medication for high blood pressure. Juror Wilson was excused because she had knowledge of the defendant's prior forgery offenses. Juror Herbruck was excused because he believed that a robbery and murder had been

committed. With respect to the dismissal of these prospective jurors, then, there is no reasonable possibility that the defendant suffered prejudice.

Nor can the defendant claim prejudice because he was required to use peremptory challenges to dismiss some prospective jurors whom the judge refused to dismiss for cause. On the second day of trial, when the trial judge realized that it may have been a mistake not to have the defendant present during the in-chambers jury questioning, the judge granted the defendant six extra peremptory challenges to compensate him for not being present when six jurors were questioned who ultimately were challenged unsuccessfully for cause and were dismissed on peremptory challenges. In total, the defendant was given seven additional peremptory challenges because the trial judge believed that he had erred in not excusing one juror for cause on the basis of the juror's statement that he believed that a crime had been committed.

Although it is possible that the defendant may have requested his counsel not to exercise peremptory challenges as to certain jurors had he been at the in-chambers proceeding, it is not likely that this would have occurred. With respect to the jurors who were challenged peremptorily, juror Whitacre stated that she had some prior knowledge of this case based upon newspaper and radio reports. The same is true for jurors Gooch and Curry. Jurors Eppinga, Hawley, Merchant, and Mixon each believed that a crime had been committed.

Giving due consideration to the defendant's argument to the contrary, we find that no error requiring reversal was committed by the in-chambers questioning of the three remaining prospective jurors, Ogston, Mahan, and Keehne. The first

was reexamined in the presence of the defendant and could have been removed by exercise of a peremptory challenge but was not. Juror Ogston was seated on the jury. Juror Mahan was reexamined by counsel in the presence of the defendant and subsequently was removed by a peremptory challenge. Juror Keehne was also removed by a peremptory challenge because of her son's friendship with the Eaton County Prosecuting Attorney. Under these facts, we are convinced that no reasonable possibility of prejudice occurred on account of the defendant's absence during the questioning of these 15 prospective jurors.

Nor are we persuaded by the defendant's claim that error occurred when the trial judge failed to grant challenges for cause asserted by the defendant against four jurors. There was no error with respect to juror Eppinga because the defendant was granted one extra peremptory challenge to compensate him for the one which he used to remove this juror. Although juror Mixon believed that a crime had been committed on account of newspaper accounts which she had read, she indicated that she could disregard these newspaper accounts and that she had no opinion as to the guilt or innocence of the defendant. Similarly, although juror Lindahl indicated that he felt that a crime had been committed, he stated that he would have based his decision solely on the evidence heard at trial. Finally, juror Zakarjsek also indicated that a newspaper article which he read would not cause him to be biased and that he would base his decision solely upon what he saw and heard in the courtroom.

On the authority of MCL 768.10; MSA 28.1033, a trial judge may excuse for cause jurors who have formed an opinion with respect to the circum-

stances of a criminal prosecution or the guilt or innocence of the accused. This statute further provides, however, that if the juror declares under oath that he can render an impartial verdict according to the evidence and if the judge is satisfied that the juror does not entertain an opinion which would influence his verdict, any prior knowledge of the juror regarding the facts of the case shall not be a sufficient ground for challenge.

Studious review of the record before us fails to convince us that the trial judge abused his discretion in refusing to dismiss these jurors for cause. Each of them stated that they had no opinion as to the defendant's guilt or innocence. See *People v Wyskochil*, 76 Mich App 468; 257 NW2d 126 (1977), *People v Moore*, 51 Mich App 48; 214 NW2d 548 (1974). The burden was on the defendant to show that these jurors were biased, and the defendant did not sustain this burden. Therefore, we find that the trial judge did not abuse his discretion. *People v Gerald Hughes*, 85 Mich App 8; 270 NW2d 692 (1978), *Moore, supra.*

The next claim of error asserted by the defendant is that the trial judge abused his discretion in denying a motion for change of venue on account of adverse pretrial publicity. We disagree.

This case is factually analogous to *People v Lewis*, 95 Mich App 513, 515-516; 291 NW2d 100 (1980). In *Lewis*, the defendant made a motion for change of venue, arguing that pretrial publicity made it unlikely that an impartial jury could be selected. After selecting a jury, the trial judge denied the defendant's motion. On appeal, this Court was not persuaded by the defendant's argument that the jurors could not be impartial after having read certain newspaper articles. In particular, this Court cited the "vigorous voir dire that

the defendant's counsel was permitted to conduct".
*Id.,* 516.

The denial of a motion for change of venue is reviewed under the abuse of discretion standard. *People v Dixon,* 84 Mich App 675; 270 NW2d 488 (1978). The mere existence of adverse publicity and the likelihood that the jury was exposed to it does not necessarily require a change of venue. Rather, it is the burden of the defendant to show that the jurors have a preconceived opinion as to his guilt.

As in *Dixon,* all jurors in this case who were seated indicated that they could render an impartial decision based entirely upon the evidence presented at trial. On the authority of this Court's decisions in *Lewis* and *Dixon* and in light of the five factors set forth by this Court in *Gerald Hughes, supra,* we hold that the trial judge did not abuse his discretion in denying the defendant's motion for a change of venue.

During his questioning of Kevin Moore, defense counsel asked him whether he had ever been convicted of armed robbery. When the question elicited an affirmative response, defense counsel then asked if this was the only armed robbery in which Moore had ever participated. The prosecutor objected to this question, and in support of it defense counsel argued that it is permissible to impeach a witness by reference to criminal activity that did not result in a conviction if the witness admits to having engaged in the activity. Defense counsel further argued that "I think it's proper to show the participation of some probative value as to participation of this witness in robbery, the fact that he may have engaged in some other armed robberies before".

The trial judge ruled that the question was improper because "only convictions can be shown to attack his credibility".

This ruling was in error. Under MRE 608(b), the trial judge has discretion to permit a defense counsel to inquire into specific instances of the conduct of a witness which are probative of truthfulness. Nonetheless, we do not believe that error requiring reversal has occurred in this case.

Because the trial judge could have excluded this evidence under MRE 403, it is unlikely that the error was so offensive to the maintenance of a sound judicial process that it could never be regarded as harmless. Both the prosecutor and defense counsel established that Moore had a conviction for armed robbery. The defendant testified that Moore had told him a number of times about the armed robberies that he had committed and further stated that "if indeed an armed robbery or any type of robbery was to be perpetrated we would need someone with experience, and Kevin Moore was the only one I knew had experience in armed robbery". During both his opening and closing statements to the jury, defense counsel argued that Moore had committed the charged crimes. Finally, the jury was informed of the fact that Moore had been given immunity, was involved in a plea bargain, had stolen a Supercharger which he had intended to sell for false identification, had stolen diet pills from his mother, and had taken his brother's gun without permission. In view of all of these facts, it is highly unlikely that defense counsel's proposed line of cross-examination would have made any difference in the jury's decision. Therefore, the trial judge's error in failing to recognize that he had discretion to admit this testimony was harmless beyond a reasonable doubt.

Nor do we find error requiring reversal in the trial judge's questioning of jurors during voir dire

regarding whether they would be prejudiced against the prosecutor merely because Kevin Moore was allowed to plead guilty to a lesser charge. This questioning did not seek a commitment from the jurors as to any particular verdict, nor did it bind them to find Moore's testimony credible. The jury was cautioned about the use of Moore's testimony inasmuch as he was an undisputed accomplice in the crimes. Therefore, because this question was designed to discover any bias that prospective jurors may have had against Moore solely because he was granted immunity and because it did not entrap, influence, commit, or obligate jurors to find Moore's testimony credible, the trial judge did not abuse his discretion in asking this question. A prosecutor is also entitled to a fair and impartial jury.

The defendant next argues that the trial judge erred in denying his motions to quash the information and to suppress the evidence because the police officers who searched the motel room in which he was apprehended did not comply with the statutory requirements of MCL 764.21; MSA 28.880.

In pertinent part, that statute provides:

"[A] peace officer with a warrant or in cases of a felony when authorized without a warrant, may break open an inner or outer door of any building in which the person to be arrested is or is reasonably believed to be if, after he has announced his purpose, he is refused admittance."

There is no question but that the arresting officers in this case did not knock and announce their purpose before entering the motel room to arrest the defendant. However, an unannounced entry into a defendant's residence by police officers

seeking to effectuate an arrest may be justified on the basis of exigent circumstances. This Court has held that where a police officer's declaration of purpose would be futile or an unnecessary formality substantial compliance with the statute is sufficient. *People v Charles Brown,* 43 Mich App 74; 204 NW2d 41 (1972). Similarly, a police officer has no duty to announce his presence when to do so would permit a defendant to escape justice, would endanger the life or safety of the police officer or the public, or would lead to the destruction of material evidence. *People v Strelow,* 96 Mich App 182; 292 NW2d 517 (1980).

In this case the police were attempting to prevent unnecessary violence by their actions. Although the defendant was entitled to some expectation of privacy in the motel room, this expectation is less than that to which he would have been entitled in his own home. In addition, the offenses with which the defendant was charged were very serious. Finally, the actions taken by the police were calculated to avoid a substantial possibility that their lives would have been endangered had they announced their presence. Therefore, it is our opinion that an exception to the requirements of the statute should be recognized in this case.

Likewise, we reject the defendant's contention that the unannounced entry of the police violated the Fourth Amendment. Exigent circumstances may permit the police to use forced entry without knocking, announcing a purpose, or otherwise identifying themselves. *Ker v California,* 374 US 23; 83 S Ct 1623; 10 L Ed 2d 726 (1963). The defendant's arrest was not in violation of the Fourth Amendment. First, it took place in a motel room and not in his own home. Further, the police officers knew that the defendant had recently

purchased a .45-calibre Commando rifle, that he had registered at the motel under one of his known aliases, and that he was dangerous, based upon the crimes charged in the warrant. In light of these factors, the police reasonably concluded that they would imperil the safety and lives of themselves and the public were they to announce their purpose. Based on these facts, we hold that the lower court did not err in denying the defendant's motions to quash the information and to suppress evidence seized as a result of the police search.

The defendant also challenges certain statements made in the affidavit supporting the search warrant. He claims that these statements were false and were made knowingly and intentionally with reckless disregard for the truth. He argues that had these statements been removed from the affidavit, there would have been insufficient cause to issue the warrant to search his automobile and the motel room. The defendant concludes that, as a consequence, the evidence seized from his automobile and from the motel room should have been suppressed.

Statements made in an affidavit supporting a search warrant may be stricken if a defendant shows that they were made in reckless disregard for the truth or that they were a deliberate falsehood and not merely negligent or innocent mistakes. However, even where such a showing has been made, the inaccuracies in the affidavit will be considered irrelevant if the remainder of it is sufficient to support a finding of probable cause to issue the warrant. *Franks v Delaware,* 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978).

We have examined each of the statements in the affidavit which the defendant claims are falsehoods. We find that the defendant has failed to prove his allegation that the affidavit is defective.

With respect to the statement, "during the course of arrest affiant observed personal effects and baggage known to be the personal effects of David Marsh", we note that the hearing transcript does not indicate how the affiant knew the ownership of the personal effects and baggage. However, one police officer testified that the owners of the motel picked a picture of the defendant out of a photographic array and informed the police officers that he was in Room No. 3. The defendant was alone at the time of the arrest. Further, one police officer testified that he saw a .45-calibre Commando rifle protruding from a duffle bag in the defendant's room. This police officer knew that this type of gun had been sold to the defendant by a Lansing gun shop. These facts tend to support the belief that the defendant was the owner of the duffle bag, and, therefore, the statement cannot be said to have been made falsely or in reckless disregard for the truth.

Nor do we find that the affidavit is defective because of the statement that the affiant "observed a pair of sunglasses and a baseball type cap in the passenger compartment of [defendant's] vehicle through the passenger side window". Both police officers who testified indicated that they had seen the cap and glasses in the automobile. One police officer stated at the hearing that he was not certain as to the type of cap because his observation had been made by use of a flashlight. Notwithstanding the defendant's testimony that he owned a beret and not a baseball cap and that he had placed his sunglasses underneath his beret so that they would not be visible from the outside of his vehicle, we cannot say that this statement was a knowing falsehood or that it was made with reckless disregard for the truth.

The defendant also claims that the affiant lied when he stated that "after affiant advised David Marsh of his rights, per *Miranda*, [1] David Marsh told affiant that the above stated vehicle was his". The defendant did testify that he may have told someone that the car was his. Whether the defendant said this in the motel room or in the police cruiser is irrelevant inasmuch as "the time of the arrest" would encompass more than the split second after actual custody of the defendant was taken. We are fully cognizant of the fact that there appears to be a discrepancy between the police officer's testimony on direct examination, which is similar to the statement in the affidavit, and his testimony on cross-examination. However, he was not asked to explain this discrepancy, and we fail to see how the mere existence of it would lead to the conclusion that the challenged statement in the affidavit was either knowingly false or made in reckless disregard for the truth.

Finally, the defendant takes exception to the statement in the affidavit, "[t]hat at the above-stated time of arrest, David Marsh had the Michigan registration, proof of insurance, and title transfer on his person, to the above-described vehicle". The undisputed testimony establishes that these papers were in a wallet in a pair of pants which defendant put on immediately following his arrest. Although the testimony establishes that the defendant was wearing only underclothing when he encountered the police, we cannot find that this statement was knowingly false or made in reckless disregard for the truth in light of the fact that the term "arrest" reasonably can be used to describe more than just the moment at which

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

the defendant was seized. During the process of his arrest, the defendant did put on a pair of pants in which these three documents were found. Thus, this statement was neither false nor made in reckless disregard for the truth.

Finally, our examination of the affidavit convinces us that even if these purportedly false statements had been stricken from it the affidavit would still have been sufficient to support probable cause. We are unpersuaded by the defendant's argument that the trial judge erred in denying his motion to suppress the evidence seized pursuant to the search warrant.

The defendant next complains that the trial judge erred by not granting the defendant's motion for a mistrial when the prosecutor indicated during his opening argument that a physician would testify that the victim of the assault would be paralyzed for life. We find no error.

The grant or denial of a motion for mistrial rests within the sound discretion of the trial judge whose decision in the matter will be reversed on appeal only upon a finding of an abuse of discretion. *People v Robertson,* 87 Mich App 109; 273 NW2d 501 (1978). Error requiring reversal results only where a trial judge's denial of a defendant's motion for mistrial is so grossly in error as to deprive the defendant of a fair trial or to amount to a miscarriage of justice. *People v Ritholz,* 359 Mich 539; 103 NW2d 481 (1960).

The trial judge found that the comment of the prosecutor to which an objection was made would not enhance the sympathy that would doubtlessly occur when the jury saw the defendant's victim sitting in his wheelchair. The trial judge further found that a reasonably intelligent jury likely would conclude, based upon their own experiences,

that a person whose spinal cord was severed by a gunshot would be paralyzed for the remainder of his life. Nonetheless, the trial judge instructed the jury to disregard the prosecutor's comment, indicated to them that the statement was calculated to elicit sympathy and was not relevant to the defendant's case, and ordered the comment to be stricken from the record. Based upon this record, we find no manifest necessity to require a mistrial. *People v Jackson,* 100 Mich App 146; 298 NW2d 694 (1980). Therefore, the trial judge did not err in denying the defendant's motion.

Nor do we find that error occurred when the trial judge permitted the prosecutor, during his redirect examination of Kevin Moore, to introduce a note written by the defendant to Moore while defendant was in jail. The use of this note during redirect examination was not beyond the scope of cross-examination. Defense counsel had asked Moore to indicate the drugs which he and others had used on the night of the incident. Defense counsel's examination of Moore created the impression that the defendant was under the influence of marijuana at the time of the crime and the impression that Moore's use of drugs that evening had impaired his memory. The exhibit introduced by the prosecutor rebutted the inference that the defendant was under the influence of marijuana and rehabilitated the credibility of Moore. Therefore, its introduction into evidence was not improper.

The final claim of error raised by the defendant is that the trial judge erred in failing to grant a mistrial or to give a cautionary instruction to the jury after certain of its members purportedly saw the defendant in handcuffs. The record fails to establish affirmatively that any member of the

jury ever saw the defendant in handcuffs. At no time did defense counsel request an evidentiary hearing on the matter or ask the trial judge to give a cautionary instruction. Because the record fails to indicate that any member of the jury actually saw the defendant in handcuffs and because the trial judge was not requested to give a cautionary instruction, we find no error. *People v Herndon,* 98 Mich App 668; 296 NW2d 333 (1980).

Affirmed.