PEOPLE v KERSCHNER

Docket No. 67181. Submitted January 3, 1984, at Grand Rapids.—
Decided March 6, 1984.

William C. Kerschner was convicted of first-degree murder, St.
Joseph Circuit Court, James P. Noecker, J. The defendant
appealed, alleging that the trial court erred in (1) denying his
motion to suppress from evidence his shoes that were seized
when he was arrested, (2) allowing into evidence a photograph
of the victim taken after he was beaten to death, and (3) in
ruling that defendant's own written statement could not be
admitted into evidence. *Held:*

1. The trial court did not err in admitting the defendant's
shoes into evidence. The defendant was arrested in Indiana.
Although both Michigan and Indiana have "knock and an-
nounce" statutes, exigent circumstances may permit the police
to use forced entry without knocking, announcing a purpose or
otherwise identifying themselves. Here exigent circumstances
justified the officers' entry into the house where the defendant
was staying.

2. The trial court did not err in allowing a photograph of the
victim taken after his death to be admitted into evidence. The
probative value of the photograph more than substantially
outweighed any prejudice to the defendant.

3. The trial court did not err in refusing to allow defendant
to introduce a written statement given by him as an exception
to the hearsay rule as a declaration against interest. That
exception does not apply where the declarant and the accused
is the same person.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error §§ 602, 881.
[2, 3] 68 Am Jur 2d, Searches and Seizures § 91.
What constitutes compliance with knock-and-announce rule in
search of private premises—state cases. 70 ALR3d 217.
[3] 68 Am Jur 2d, Searches and Seizures § 44.
[4] 29 Am Jur 2d, Evidence §§ 617, 622.

1. EVIDENCE — SUPPRESSION OF EVIDENCE — APPEAL.

The Court of Appeals will not disturb a trial court's ruling on a motion to suppress evidence unless such ruling is found to be clearly erroneous; a ruling is clearly erroneous if the reviewing court is left with a firm conviction that a mistake has been made.

2. ARREST — KNOCK AND ANNOUNCE RULE.

A peace officer with a warrant, or in cases of a felony when authorized without a warrant, may break open an inner or outer door of any building in which the person to be arrested is, or is reasonably believed to be, if, after he has announced his purpose, he is refused admittance (MCL 764.21; MSA 28.880).

3. ARREST — KNOCK AND ANNOUNCE RULE.

An unannounced entry into a suspect's residence by a police officer seeking to effectuate an arrest may be justified on the basis of exigent circumstances; an officer need not announce his presence, knock, or otherwise identify himself where such declaration would be futile or an unnecessary formality or would permit the suspect to escape justice, endanger the life or safety of the officer or the public, or lead to the destruction of material evidence (MCL 764.21; MSA 28.880).

4. EVIDENCE — DECLARATIONS AGAINST INTEREST — RULES OF EVI-
   DENCE.

The admissibility of a declaration against interest as an exception to the hearsay rule comes into play only where the declarant and the accused are different people (MRE 804[b][3]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Robert Cares,* Prosecuting Attorney, for the people.

*O'Malley & Welty* (by *William D. Welty),* for defendant on appeal.

Before: R. B. BURNS, P.J., and V. J. BRENNAN and J. T. KALLMAN,* JJ.

PER CURIAM. On February 4, 1982, defendant

* Circuit judge, sitting on the Court of Appeals by assignment.

was found guilty by a jury of first-degree murder, MCL 750.316; MSA 28.548. He was sentenced to life in prison and appeals as of right. In a separate trial, defendant's accomplice, Lawrence Dewayne Pontius, was also convicted of first-degree murder.

Sharon Miller lived with William McKale in Sturgis, Michigan. Because she planned to be out of town on the weekend of August 22, 1981, Miller asked her mother, Jennie Miller, to look in on McKale. Before leaving town, Miller stopped at the home of defendant's brother where she encountered defendant and Dewayne Pontius. Miller mentioned to defendant that she would be out of town. On the evening of Friday, August 21, 1981, Jennie Miller looked in on McKale. When she left his home, the doors were locked and the house was in order. Upon her return to McKale's home the following evening, Mrs. Miller found the door ajar and McKale's body on the floor of the bedroom. The bedroom had been ransacked and there were blood smears in the room. Dr. Baker, the pathologist who performed the autopsy on McKale, testified that the cause of McKale's death was a subdural hematoma caused by blunt trauma. Baker also testified that McKale had innumerable bruises on all parts of his body, six fractured ribs, and internal hemorrhaging around his right kidney and the mesentery to his small intestine, as well as severe bruises to his head. Additionally, Baker testified that McKale had cirrhosis of the liver.

Dewayne Pontius was arrested on Monday, August 24, 1981, after he attempted to cash a check allegedly written by McKale. Pontius admitted that he and defendant had broken and entered McKale's house in the early morning hours of August 22, 1981, and accused defendant of having

"kicked him [McKale] in the back and in the head".

Sturgis police detective James Houck obtained a warrant for defendant's arrest during the evening of August 24, and he also informed Detective Sergeant Thomas Brown of the Peru, Indiana, police about the warrant. The following morning, the information was entered into the LEIN computer system. Houck called Brown, again giving him information on where defendant might be, and he requested defendant's arrest and preservation of defendant's shoes. Brown and four other Peru police officers went to the home of Patricia Niceé, defendant's fianceé, to look for defendant. The officers arrested defendant and took his shoes into custody.

Defendant was bound over to circuit court on charges of breaking and entering an occupied dwelling, MCL 750.110; MSA 28.305, felony murder, MCL 750.316; MSA 28.548, and unarmed robbery, MCL 750.530; MSA 28.798. The breaking and entering and robbery counts were later dismissed by an order *nolle prosequi*.

Defendant's first claim is that the trial court erred in denying his motion to suppress his shoes which were seized at the time of his arrest. A trial court's ruling on a motion to suppress will be reversed only if it is clearly erroneous. *People v Jackson,* 123 Mich App 423; 332 NW2d 564 (1983). A ruling is clearly erroneous if the reviewing court is left with a firm conviction that a mistake has been made. *People v Julkowski,* 124 Mich App 379; 335 NW2d 47 (1983).

Defendant argues that his arrest was illegal because the police acted in violation of an Indiana "knock and announce" statute and no exigent circumstances existed that would justify the viola-

tion. Therefore, he contends that the seizure of his shoes was improper and the shoes should not have been admitted into evidence.

Indiana has a "knock and announce" statute:

"To make an arrest in criminal actions the officer may break open any outer or inner door or window of a dwelling house or any other building or inclosure to execute the warrant, if, after notice of his authority and purpose, he be refused admittance." IC 1971, 35-1-19-6, Ind Ann Stat § 9-1009 (Burns Code ed).

In Indiana, if exigent circumstances exist, the statutory "knock and announce" requirement may be omitted. *Johnson v State,* 157 Ind App 105; 299 NE2d 194 (1973) (entry into suspect's home to effect warrantless arrest); *Britt v State,* 395 NE2d 859, fn 2 (Ind App, 1979); *State v Dusch,* 259 Ind 507; 289 NE2d 515 (1972) (execution of search warrant). "Exceptions to the entry requirement must be founded on particularity and not on generality." *Dusch, supra,* p 518.

Michigan also has a similar "knock and announce" statute, MCL 764.21; MSA 28.880, which states in pertinent part:

"[A] peace officer with a warrant or in cases of felony when authorized without a warrant, may break open an inner or outer door of any building in which the person to be arrested is or is reasonably believed to be if, after he has announced his purpose, he is refused admittance."

Furthermore, Michigan also recognizes the exigent circumstances exception as justification for an unannounced entry. "Exigent circumstances may permit the police to use forced entry without knocking, announcing a purpose, or otherwise identifying themselves. *Ker v California,* 374 US

23; 83 S Ct 1623; 10 L Ed 2d 726 (1963)." *People v
Marsh,* 108 Mich App 659, 672; 311 NW2d 130
(1981), *cert den* — US —; 103 S Ct 119; 74 L Ed 2d
104 (1983).[1] The panel in *Marsh* explained:

"[A]n unannounced entry into a defendant's residence
by police officers seeking to effectuate an arrest may be
justified on the basis of exigent circumstances. This
Court has held that where a police officer's declaration
of purpose would be futile or an unnecessary formality
substantial compliance with the statute is sufficient.
*People v Charles Brown,* 43 Mich App 74; 204 NW2d 41
(1972). Similarly, a police officer has no duty to an-
nounce his presence when to do so would permit a
defendant to escape justice, would endanger the life or

[1] Under both Michigan and Indiana law, *Payton v New York,* 445
US 573; 100 S Ct 1371; 61 L Ed 2d 639 (1980), requires possession of
an arrest warrant by police before they can enter a suspect's home to
effect his arrest in the absence of exigent circumstances. *People v
Oliver,* 417 Mich 366, 376; 338 NW2d 167 (1983); *Harrison v State,*
424 NE2d 1065, 1068 (Ind App, 1981). Thus, it is clear that, in light of
case law, entry into a suspect's home without a warrant regardless of
either state's "knock and announce" statute mandates a finding of
exigent circumstances as well as probable cause to arrest. See *Oliver,
supra,* pp 12-13; *Harrison, supra,* pp 1068-1069. *Payton, supra,* does
not apply to the instant case because the suspect was arrested in a
third party's home. However, in *Steagald v United States,* 451 US
204; 101 S Ct 1642; 68 L Ed 2d 38 (1981), the United States Supreme
Court held that an arrest warrant alone is not sufficient authority for
entry into the home of a third party to arrest the subject of an arrest
warrant. *Oliver, supra,* p 376. In *Steagald, supra,* the Court deter-
mined that absent consent or exigent circumstances, law enforcement
officers could not search for the subject of an arrest warrant in a
third party's home without first obtaining a search warrant. The
claim in *Steagold* was not raised by the subject of the arrest warrant,
rather it was raised by the third party who was arrested after the
police seized contraband during their search for the subject of the
warrant. Indeed, defendant herein does not raise the alleged invalid-
ity of his arrest on the ground that the Indiana police had no search
warrant. However, our finding of exigent circumstances today would
also justify the search without a warrant conducted for defendant in
his fiancee's home. We also note that the Court's reasoning in *Marsh,
supra,* that the defendant was entitled to an expectation of privacy
less than that to which he would have been entitled in his home
because he was arrested in a motel room is incorrect in light of the
holding in *Oliver, supra,* which extends the *Payton* rule to motel
rooms.

safety of the police officer or the public, or would lead to the destruction of material evidence. *People v Strelow,* 96 Mich App 182; 292 NW2d 517 (1980)." 108 Mich App 672.

In the instant case, on the morning of August 25, 1981, five officers from the Peru, Indiana, Police Department went to the home of Patricia Nice in search of defendant. Three of the officers were in uniform. Of those three, two went around to the rear of the home. Detective Sergeant Thomas Brown testified that as he pulled up in front of the house, he saw a man and a woman exit from a car and go toward the door of Nice's house. Brown talked with the pair and learned that the woman was Loretta McIntosh, Nice's sister. He testified that he told McIntosh that they were looking for defendant. When he asked her if Nice or the defendant were at home, she responded that she did not know but that she would check. According to Brown, McIntosh knocked on the door and when there was no answer she opened the door, which was unlocked, proceeded into the house and invited the officers in with her. McIntosh proceeded up the stairs, followed by Brown and another officer. When they got upstairs, they saw defendant in bed and placed him under arrest. The officers took defendant downstairs and Brown read defendant his *Miranda* rights.[2] When defendant asked if he could put on his shirt, Brown went upstairs to get the shirt. Defendant was allowed to put on his shoes. When Brown came back downstairs, he told defendant to remove the shoes and he took them into custody.

It is our opinion that sufficient exigent circum-

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

stances existed to justify the officers' entry into the home.

A murder warrant had been issued for defendant, who had fled from Michigan. When McIntosh entered the house, it would not have been unreasonable for the police to surmise that she might alert defendant that the police were looking for him. Had this occurred, the grave risk of danger posed to the police and McIntosh by the defendant who may have been armed and who may have attempted to escape from the house was highly probable since defendant was a fugitive. Furthermore, there was also a distinct possibility that the evidence sought (blood on defendant's shoes) might have been destroyed.

We conclude that the trial court's decision to admit the shoes was proper.

Defendant further claims that the trial court abused its discretion by allowing into evidence a photograph of the deceased taken after he was beaten to death. The court, in the absence of the jury, took testimony from the pathologist who performed the autopsy and from the county medical examiner. The court concluded that the photo adequately showed the condition of the deceased relating to the bruises and other injuries that caused his death. In view of the prosecutor's burden of proving the element of malice, he admitted the photo into evidence, finding further that the probative value of the photograph more than substantially outweighed any prejudice to the defendant. We find no error in this ruling.

Defendant also claims that the trial court erred in ruling that defendant's own written statement could not be admitted into evidence by him. Again, we disagree with defendant.

Defendant gave a statement to the Sturgis police

in which he admitted having participated in the breaking and entering and robbery but blamed McKale's death on his codefendant. Defendant's motion to suppress the statement was denied. When the prosecution decided not to produce the statement at the trial, defendant attempted to introduce it as a statement against interest under MRE 804(b)(3). The trial court denied defendant's motion. There was no error. The statement was inadmissible under MRE 804(b)(3) because the declarant and the accused were the same individual. *People v Hawkins,* 114 Mich App 714, 718-719; 319 NW2d 644 (1982). Furthermore, a similar statement has been excluded as hearsay not qualifying under any exception in *People v Perryman,* 89 Mich App 516, 520; 280 NW2d 579 (1979). See also *People v Hunter,* 69 Mich App 694; 245 NW2d 347 (1976) (statement made by defendant in an effort to free himself from suspicion was excluded as self-serving).

The defendant raises several other claims of error, however, our review of the record indicates that they are without merit.

Conviction affirmed.